367 So.2d 1016 (1979)
Ollie R. WILLIAMSON, Petitioner,
v.
Veva C. WILLIAMSON, Respondent.
No. 53413.
Supreme Court of Florida.
February 8, 1979.
*1017 Dedee S. Costello, Panama City, for petitioner.
Robert B. Staats, Panama City, for respondent.
SUNDBERG, Justice.
This cause is before us on a petition for writ of certiorari to review a decision of the District Court of Appeal, First District, reported at 353 So.2d 880, which is alleged to be in conflict with the decisions of the District Court of Appeal, Third District, in Claughton v. Claughton, 344 So.2d 944 (Fla. 3d DCA 1977), and Escobar v. Escobar, 300 So.2d 702 (Fla. 3d DCA 1974). We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
Petitioner, Ollie R. Williamson, filed for dissolution of his marriage to respondent, Veva C. Williamson, in the Circuit Court for Bay County, Florida, in January, 1976. The couple had been living apart since 1973. The trial court granted a dissolution on September 15, 1976, and after a supplemental final hearing on December 22, 1976, awarded to respondent $10,000 lump sum alimony and $100 per month permanent periodic alimony. At the time of the judgment of dissolution, petitioner possessed $16,000 in cash and bonds accumulated during the marriage and had an income of $354.77 per month from a disability pension. Respondent had only $155 in cash, no income, and required in excess of $400 per month for necessary expenses. In addition, the parties jointly owned a home in Bay County appraised at $36,000 and a home in Jackson, South Carolina. By stipulation, they agreed to sell the Florida home and divide the proceeds equally, and petitioner agreed to purchase for $4,500 his wife's interest in the South Carolina property. Both parties are afflicted with permanent physical disabilities which prevent them from holding full-time gainful employment.
In addition to the foregoing factors, the trial court partially based its alimony award on a finding that petitioner was responsible for his wife's strained economic condition because he abandoned her in 1973, taking with him a considerable portion of the family savings, and because he refused to attempt a reconciliation although respondent remained willing to do so. On this basis, the court concluded that, as a matter of equity, petitioner should bear the heaviest portion of the economic burden placed on both parties by the judgment of dissolution. On appeal, petitioner challenged the alimony award on the ground that the trial judge improperly considered evidence of his alleged marital misconduct in determining a proper alimony award. The district court rejected petitioner's argument by stating:
[T]he relative fault of the parties is an equitable circumstance and a factor concerning which evidence should be admitted, if offered, and which, together with the other circumstances revealed by the evidence, should be considered by the trial court in determining whether or not to award alimony, and if so the amount thereof.
353 So.2d at 883.
Petitioner asserts, based on the decisions of the District Court of Appeal, Third District, in Escobar and Claughton, that the correct rule of law with respect to awarding alimony is that evidence of marital misconduct should never be considered except in cases of gross misconduct such as adultery or habitual intemperance toward one's spouse, and that no evidence of marital misconduct by the spouse not seeking alimony should ever be considered except in mitigation or defense of the conduct of the spouse seeking alimony. Although we agree that Escobar and Claughton state the proper rule of law with respect to evidence of alleged adultery, we cannot give these cases the expansive reading petitioner suggests.
In Escobar, the District Court of Appeal, Third District, affirmed a trial court's ruling refusing to hear testimony about the husband's alleged adultery from a wife *1018 seeking alimony. The district court's decision was based on section 61.08(1), Florida Statutes (1973), which, in pertinent part, provided:
The court may consider the adultery of a spouse and the circumstances thereof in determining whether alimony shall be awarded to such spouse and the amount of alimony, if any, to be awarded to such spouse. [Emphasis supplied.]
The district court concluded that this statute permits a trial court to refuse to consider evidence of the adultery of a spouse not seeking alimony when such evidence is offered solely for the purpose of obtaining or increasing an alimony award to the spouse seeking alimony.
In Claughton, the same district court upheld a trial court's order requiring a husband to answer questions from his wife about his alleged adulterous activities. In that case, however, the husband had previously charged the wife with adultery in an attempt to defeat her request for alimony. The district court held that, under such circumstances, section 61.08(2), Florida Statutes (1975), which permits a trial judge to "consider any factor necessary to do equity and justice between the parties" in determining a proper alimony award, requires that a spouse seeking alimony be allowed to offer evidence of the adultery of the spouse not seeking alimony in defense or mitigation of his or her own alleged adulterous conduct.
We agree with the analysis of the District Court of Appeal, Third District. The legislature has expressly provided in section 61.08(1), Florida Statutes (1975), that a trial court may consider evidence of adultery in determining a proper award of alimony. This section permits, but does not require, a trial judge to consider evidence of adulterous activities by a spouse seeking alimony as a mitigating defense to an award of alimony and the amount thereof. Likewise, we concur that section 61.08(2) requires, as a matter of equity, that a trial judge who does consider evidence of adulterous activity by a spouse seeking alimony must also consider evidence of adulterous conduct by the spouse not seeking alimony in mitigation or defense of the conduct of the spouse seeking alimony. A proceeding for dissolution of marriage is an equitable proceeding. A spouse who invokes the jurisdiction of a court of equity to resolve his or her marital difficulties must submit to the equitable doctrines that he who seeks equity must stand before the court with "clean hands" and "he who seeks equity must do equity." Blanton v. Blanton, 154 Fla. 750, 18 So.2d 902 (1944); Engebretsen v. Engebretsen, 151 Fla. 372, 11 So.2d 322 (1942). Therefore, it would be manifestly unfair for one spouse to be allowed to defend against an alimony claim by charging the other spouse with adultery when the spouse not seeking alimony may be equally guilty of the same misconduct.
Although we construe section 61.08, Florida Statutes (1975), to permit, and in some instances require, the consideration of evidence of adulterous conduct in a proceeding to determine a proper alimony award, it must be remembered that the primary standards to be used in determining a proper alimony award are the demonstrated need of the spouse seeking alimony and the demonstrated ability of the other spouse to pay. Sisson v. Sisson, 336 So.2d 1129 (Fla. 1976); Firestone v. Firestone, 263 So.2d 223 (Fla. 1972). We do not suggest that these factors may in any way be ignored. As we previously pointed out in Vilas v. Vilas, 153 Fla. 102, 13 So.2d 807 (1943), alimony is not a weapon to be used solely to punish an errant spouse. We also adopt the admonition of the District Court of Appeal, Third District, in Claughton, that:
In no way should our decision today be read as lending support to any unbridled discovery into the sullied areas of adulterous activities. It is our hope that the learned chancellor would caution against "`an unlimited foray into the details' of the alleged adultery" and "restrict the inquiry `within reasonable bounds'". It is enough that the chancellor "`simply get a broad picture and understanding of the relative equities and factors necessary to do justice.'" Our primary concern is *1019 of course the effect a detailed probe into the private lives of the parties might have on the innocent children involved, not to mention the disruptive effect such an inquiry might have upon the married lives of third persons involved in the illicit conduct and their children. We would only hope then, that the chancellor would make the necessary safeguards to protect the above mentioned individuals from any unnecessary embarrassment, ridicule or scorn.
344 So.2d at 947 (citations omitted).
Although we conclude that a trial court should consider evidence of adultery only within the limits expressed herein, in the instant case we cannot agree with petitioner's assertion that in determining a proper alimony award a trial judge must always be limited to consideration of only instances of extreme misconduct such as adultery. Nor can we agree, as a rule of universal application, that the conduct of the spouse not seeking alimony may be considered only in mitigation or defense of the conduct of the spouse seeking alimony. On the facts of the instant case we concur with the actions of the trial judge. Neither adultery nor any other extreme misconduct was charged. Here the trial court simply was faced, as it too frequently is in dissolution proceedings, with the extremely difficult task of providing for the welfare of both parties in a situation where there is not enough property or income to permit either party to live alone comfortably. The evidence shows that neither party was able to work for a living, nor is it likely either will ever be able to do so again. At the time of the dissolution, petitioner had only $16,000 in savings and only $354.77 per month in income, while respondent had no savings or income. Obviously, the trial judge could not divide these funds so that either party could ever again live comfortably, even considering the division of real property which the parties agreed upon. It is difficult to imagine a more desperate economic situation for two permanently disabled, middle-aged persons. Under such circumstances, we conclude that it is entirely proper, as a matter of equity, to base an alimony award partially on a finding that one spouse is more responsible than the other for the difficult economic circumstances facing both parties. This is not an assessment of fault but rather of economic reality.
Nonetheless, we cannot agree with the standard set forth by the District Court of Appeal, First District, in its opinion in this case. We unequivocally disapprove any suggestion that it is always proper for a trial court to consider the "relative fault" of both parties in determining a proper alimony award. To permit such a standard would be directly contrary to the spirit and intent of our system of no-fault dissolution. The legislature has expressly declared that the purpose of our no-fault system is "[t]o promote the amicable settlement" of marital disputes and "[t]o mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." § 61.001, Fla. Stat. (1975) (emphasis supplied).
For a trial court to perform routinely a balancing act with testimony of alleged marital misconduct of the parties would be a step backward to the days of threats and insinuations which plagued our courts before our no-fault system was enacted and would be directly contrary to express legislative policy. Therefore, we hold that section 61.08(2), Florida Statutes (1975), which permits a trial court to consider "any factor to do equity and justice between the parties," does not permit a court to conduct an inquiry into every aspect of the marital conduct of the parties as a matter of course. Whether such an inquiry is proper will depend upon the circumstances of each case. Today we hold only that where an analysis of the need of one spouse and the ability of the other to pay demonstrates that both parties will suffer economic hardship as a result of any division of available resources the court might make, the court may then consider, as an equitable circumstance under section 61.08(2), Florida Statutes (1975), any conduct of either party which may have caused the difficult economic situation in which they stand before the court.
*1020 Accordingly, the writ of certiorari heretofore issued is discharged, but the decision of the District Court of Appeal, First District, is approved only insofar as it accords with the views expressed in this opinion.
It is so ordered.
ENGLAND, C.J., and OVERTON and ALDERMAN, JJ., concur.
HATCHETT, J., dissents.