463 So.2d 265 (1984)
Myra R. LANGER, Appellant,
v.
Roger E. LANGER, Appellee.
Nos. 83-2753, 83-2834.
District Court of Appeal of Florida, Third District.
October 2, 1984.
On Rehearing February 12, 1985.
*266 Floyd, Pearson, Stewart, Richman, Greer, Weil & Zack and Ray Pearson and Bertha Claire Lee, Miami, for appellant.
Michael A. Lipsky, Miami, for appellee.
Before BARKDULL, NESBITT and JORGENSON, JJ.
PER CURIAM.
The wife appeals the real property distribution awards made by the trial court as part of its final judgment of marriage dissolution. If reasonable men could differ as to the propriety of the distribution, there is no abuse of discretion and we must affirm. Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980). When reviewing this judgment, we must look at the judgment as a whole, and not the separate remedies used by the trial court to achieve equity between the parties. Jones v. Jones, 431 So.2d 697 (Fla. 2d DCA 1983). A 50/50 division of marital assets has never been required for a distribution to be equitable. While we might have awarded the wife a greater amount had we been the trier of fact, this is no basis for reversal. DiPrima v. DiPrima, 435 So.2d 876, 878 (Fla. 5th DCA 1983), review denied, 447 So.2d 886 (Fla. 1984). We find that the property distribution involved herein was within the broad discretion granted trial courts in this area. Canakaris. The wife's other points on appeal are without merit. Finally, we find no error in the trial court's award of attorney's *267 fees to the wife. See Canakaris, 382 So.2d at 1205. Accordingly, we affirm.

ON MOTION FOR REHEARING GRANTED
NESBITT, Judge.
After rehearing, we vacate our prior opinion and reverse the award aspect of the final judgment dissolving the marriage of Myra and Roger Langer.
The Langers were married in February 1971. During the early years of the marriage, Myra worked as a school teacher in the Dade County school system while Roger built up an electrical contracting business, of which he is the sole stockholder, known as Foster Electric. The company was successful and the parties eventually enjoyed a very comfortable lifestyle and acquired substantial property.[1] Myra's employment with the school board ended in 1976 with the birth of the couple's only child, Michelle, who is now eight years old. Since then, Myra has been a mother and homemaker.
After some period of marital difficulties, Myra filed a petition for dissolution in July 1982. The marriage was dissolved by an order dated August 9, 1983. The order awarded Myra $600 per month child support,[2] $800 per month permanent periodic alimony and $300 per month rehabilitative alimony for a two-year period. The order also awarded each of the spouses, as lump sum alimony, certain interests of the other spouse in jointly held real property. Mrs. Langer challenged the final judgment on a motion for rehearing, which was denied.
The appellant, Myra Langer, raises three issues, all of which are worthy of discussion. First, she asserts that the trial judge erred in excluding evidence of Roger Langer's adultery and drug use. Second, she maintains that the trial court erred in awarding Roger her interests in certain jointly held real properties as lump sum alimony. Finally, she contends that there is not competent substantial evidence to support the judgment. We agree with each contention, discuss them in turn and reverse for a rehearing on property distribution.

EVIDENCE OF ROGER'S MISCONDUCT
Myra's counsel made a proffer of testimony which would have shown recent and extensive drug use by Roger and his participation in a longstanding adulterous affair. The proffer was refused so that the only testimony about misconduct was that of the parties, with no corroboration. Because the misconduct of a spouse is relevant to both the amount of an alimony award, § 61.08, Fla. Stat. (1981); Claughton v. Claughton, 344 So.2d 944 (Fla. 3d DCA 1977), and to a determination of custody and visitation rights, § 61.13, Fla. Stat. (1981); Culpepper v. Culpepper, 408 So.2d 782 (Fla. 2d DCA 1982); Claughton, the trial court erred in excluding this testimony which, if consistent with the proffer, would have shown extensive misconduct. When the evidence of misconduct is such that it is legally and equitably relevant to the dissipation of marital assets and the welfare of the children, it should be considered. In this case, both the adultery and drug use, if as longstanding and extensive as proffered, may have contributed to the depletion of the financial resources of the family and should be admitted on remand. We wish to emphasize, however, that evidence of misconduct is material not to the determination of whether the marriage is irretrievably broken, but to an appropriate resolution of alimony, custody and visitation issues. Finally, we repeat our advice that appropriate steps be taken to protect third parties and children from unnecessary embarrassment, *268 ridicule or scorn. Claughton, 344 So.2d at 947.

THE LUMP SUM AWARD
Prior to dissolution, the parties owned the following property jointly: the marital residence, sixteen apartment units on N.W. 2nd Avenue in Homestead, an eighteen-unit apartment, a warehouse and a five-acre tract on St. George Island.[3] The judgment awarded Myra, as lump sum alimony, all of Roger's interest in the marital home and eight of the sixteen apartment units on N.W. 2nd Avenue. Roger's lump sum alimony consisted of all of Myra's interest in eight of the sixteen N.W. 2nd Avenue apartment units, the eighteen-unit apartment building, the warehouse and the five-acre tract at St. George Island. The equity interests of the parties before and after the judgment are as follows:

 PREJUDGMENT POSTJUDGMENT
 Myra Roger Myra Roger
Marital residence 33,000 33,000 66,000 -0-
16-unit apt. (2nd Ave.) 106,000 106,000 106,000 106,000
18-unit apt. (10th St.) 106,500 106,500 -0- 213,000
St. George Island 16,500 16,500 -0- 33,000
Warehouse 107,000 107,000 -0- 214,000
 ________ ________ ________ ________
 $369,000 $369,000 $172,000 $566,000

Mrs. Langer challenges the lump sum award of her interests in the couple's jointly held property to her husband. We agree that the award was error.
Lump sum alimony is permissible when the evidence reflects (1) a justification for the payment, and (2) the ability of the spouse to pay without substantially endangering his or her economic status. Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980); De Cenzo v. De Cenzo, 433 So.2d 1316, 1319 (Fla. 3d DCA 1983); Rosen v. Rosen, 386 So.2d 1268, 1271 (Fla. 3d DCA 1980), review denied, 392 So.2d 1378 (Fla. 1981). The issue here is whether there is any justification for the lump sum award to Mr. Langer. In Rosen, this court articulated likely reasons for the award of lump sum alimony; they include avoiding vexatious litigation, providing a spouse with security against the possible demise or disability of his or her former marital partner, or some showing that the receiving spouse has a particularized need for the award or the paying spouse is unable to make periodic payments. 386 So.2d at 1271-72. None of those justifications exist in this case and we find no others which would apply here. It appears from the final judgment that the trial court felt the award was necessary in order to prevent Mr. Langer from being placed in a position of "economic hardship." However, even if the trial court had accomplished only a relatively equal distribution of the jointly held properties, Mr. Langer would be the owner of Foster Electric, a significant amount of personal property and some $370,000 worth of equity in real property (excluding his equity interest in the apartment at Quayside). Such a financial status can scarcely be characterized as one of "economic hardship." An award of lump sum alimony without justification is an abuse of discretion and cannot stand.[4]

SUFFICIENCY OF THE EVIDENCE
Mrs. Langer set out in her brief a number of findings which she maintains *269 are not supported by competent substantial evidence. Mr. Langer failed to provide record citations supporting the findings contested by his wife. After a painstaking review of the record, we find that there is not competent substantial evidence to support the following findings:[5]
(1) Her [the wife's] witness, Robert Lessne, an economist and rehabilitation expert, testified that Wife can immediately earn at least $15,000 per annum as a teacher... .
She is well educated and can also, if she wishes to do so, easily obtain a Dade County teaching position and earn an additional $15,000 annually (emphasis supplied).
Mr. Lessne's testimony merely indicated that $15,000 was the starting salary for a teacher with a master's degree. He did not indicate that Mrs. Langer could "easily obtain" such a position and thereby "immediately" earn $15,000 per year. In fact, in testifying about the job opportunities for which Mrs. Langer is qualified, Mr. Lessne said, "Guidance counseling would be down. We have a surplus of English teachers." In other words, the prospects are not good.
(2) Mr. Samee's testimony was well documented.
Mr. Samee was the husband's expert witness and testified that Foster Electric was of no value.[6] There is nothing in the record to demonstrate that Mr. Samee's testimony was any more well documented than that of the wife's expert, Mr. Sobel.
(3) Corporate borrowing on this property [Foster Electric's warehouse] has apparently eroded the value of this lone substantial asset. The warehouse constitutes the sole remaining available source of needed future recapitalization of the company. (emphasis supplied)
Both Mr. Samee and Mr. Sobel testified that accounts receivable, which exceeded Foster Electric's debts by almost $100,000, were also available for recapitalization.
(4) Husband did initially use poor financial judgment in selecting hotel accommodations as his lodging after separation from Wife... .
The record here does suggest that Wife's conduct immediately after filing her dissolution action resulted in an unwarranted depletion of marital assets through unjustified and extravagant expenditures for clothing and other items... .
The record shows: (1) that in the five months after the couple separated, the husband spent approximately $10,000 living in various hotels, despite the fact that he had an unoccupied apartment available to him, and (2) that the wife spent approximately $1,000 on clothing after filing for dissolution. Why the husband's spending is classified as "poor financial judgment" while the wife's is called "an unwarranted depletion of marital assets" is unclear. What is clear, however, is that the husband's extravagances were ten times that of the wife and that the evidence would only support these findings if the characterizations were reversed.
(5) An analysis of the ability at this time of the Husband to pay demonstrates any further division of available resources the Court might make would visit economic hardship upon the Husband.
We take this paragraph to mean that a lump sum award of Mrs. Langer's interest in certain jointly held real property was necessary in order to prevent Mr. Langer's economic hardship. Such a finding is clearly erroneous, as is evident from our discussion of the lump sum award above.
The trial court findings discussed are not supported by the evidence. Because those findings were crucial to a determination of the wife's need, the husband's ability to *270 pay and the depletion of marital assets, the award as a whole is infected and must be reversed. We remand for a rehearing of the entire award aspect of the judgment.
Reversed and remanded.
NOTES
[1] There was evidence that Myra contributed some services to Foster Electric, particularly in the early years of the marriage. In addition, either the company's purchase, or its growth, were aided by a $20,000 loan from Myra's parents.
[2] The August 9, 1983 final judgment was corrected by an order of November 17, 1983, increasing the child support by $200 per month (from $400 to $600).
[3] Myra owned, individually, a condominium in Hallandale. Roger owned, in his own name, an apartment at Quayside. Neither of these interests was affected by the final judgment.
[4] We are aware of the supreme court's recent decision in Tronconi v. Tronconi, 466 So.2d 203 (1985). However, that case does not affect the outcome here because, as is clear from our decision, the lump sum award to the husband did not achieve an equitable distribution.
[5] The paragraphs containing the court's findings have been renumbered.
[6] The evidence showed that in 1982 Foster Electric attempted to take on large construction projects and suffered heavy losses. However, both parties' experts testified that Foster Electric, when it avoids extended contract work in favor of service work, is a successful business. There is also evidence that with proper use of capital the company can recover from its 1982 losses.