We have before us a property distribution scheme entered pursuant to a marital dissolution proceeding. On this occasion we review Noah v. Noah, 467 So.2d 426 (Fla. 4th DCA 1985), wherein the district court certified the following question of great public importance:
 DOES THE WILLIAMSON DECISION PERMIT A TRIAL JUDGE TO MAKE A DISTRIBUTION OF VIRTUALLY ALL THE ASSETS TO A FAITHFUL WIFE, IN PART BECAUSE HER HUSBAND HAS BEEN UNFAITHFUL?
We have jurisdiction, article V, section 3(b)(4), Florida Constitution, and answer the question in the negative.
The facts in this cause are undisputed. The marriage dissolved below was of ten years duration. Both parties are employed by the same major corporation, the wife as a typist, the husband as a financial analyst. The husband is in good health but the wife has major health problems. The five principal assets of value were:
 A condominium having a $35,300 equity.
 A house having a $61,000 equity.
 Furniture valued at $9,000.
 Her automobile, equity $600.
 His automobile, equity $3,300.
The equity in these joint assets totaled approximately $109,000, all of which were awarded to the wife, as a lump sum alimony, with the exception of the husband's automobile valued at $3,300.
In the final judgment, the trial court stated: *Page 1126 
 Because the wife was a good wife, in view of her contributions to the marriage, the disparity in the parties' income, the husband's ability to pay alimony, the wife's inability to earn a sum sufficient to support herself, the parties' ages, the length of the marriage, the wife's ill health, and because of the husband's gross marital misconduct, the court will award the wife a combination of permanent and lump sum alimony.
The district court was particularly troubled, as we are, that the distribution was predicated in part on the husband's adulterous affair, and concluded that this disproportionate distributional scheme, as lump sum alimony, was an abuse of discretion by the trial court. The district court felt that the distribution was inequitable, contrary to our holding in Tronconi v. Tronconi,466 So.2d 203 (Fla. 1985), and that the trial court's utilization of the husband's adultery was contrary to our decision inWilliamson v. Williamson, 367 So.2d 1016 (Fla. 1979).
Williamson involved our review of an alimony award to the wife which was partially based on the finding that the wife's strained financial situation had been caused by the husband abandoning her, "taking with him a considerable portion of the family savings." 367 So.2d at 1017. Recognizing that the situation before the trial court was one where there were insufficient assets to allow either party to live alone comfortably, we upheld the trial court's determination that, as a matter of equity, the husband should bear the heaviest economic burden placed on the parties by the dissolution. Id. at 1019. While factually Williamson did not involve the issue of what role, if any, a spouse's adultery should play in dissolution proceedings, our jurisdiction was predicated on conflict withClaughton v. Claughton, 344 So.2d 944 (Fla. 3d DCA 1977), andEscobar v. Escobar, 300 So.2d 702 (Fla. 3d DCA 1974), both of which explicitly dealt with that issue. Our discussion inWilliamson of Escobar centered on the proper interpretation of section 61.08(1), Florida Statutes (1973), which provided, in relevant part:
 The court may consider the adultery of a spouse and the circumstances thereof in determining whether alimony shall be awarded to such spouse and the amount of alimony, if any, to be awarded to such spouse.[1]
We approved the district court's conclusion in Escobar that the statute allows a trial court to refuse to consider the adultery of a non-alimony seeking spouse when this evidence is offered by an alimony seeking spouse solely to obtain or increase an award of alimony. 367 So.2d at 1018.
Claughton involved the proper interpretation of section61.08(2), Florida Statutes (1975), which permits the trial court to "consider any . . . factor necessary to do equity and justice between the parties."[2] Factually, Claughton dealt with a husband who had allegedly been engaging in adulterous conduct throughout the parties' twenty-year marriage. The wife had allegedly engaged in a single extra-marital affair, and then only after it became apparent that the marriage was irretrievably broken. 344 So.2d at 946. Prior to a hearing on the issue of alimony, each spouse attempted, through interrogatories, to question the other about their respective illicit sexual activities. Each spouse refused to answer these questions. After the trial court ordered both parties to answer the questions, the parties filed an interlocutory appeal. Before the district court, the husband, relying on Escobar, contended that he should not be required to answer the questions as he was not the spouse seeking alimony. Id. at 945-46. The district court rejected this argument, and held that section 61.08(2) was applicable to the case as it would be a "manifest injustice" to allow the husband to utilize section 61.08(1) as a defense to the payment of alimony based on the wife's single affair, while the husband's activities "went unnoticed." Id. at 946. *Page 1127 
In Williamson we agreed with the district court's reasoning in Claughton that a trial judge who does consider evidence of an alimony-seeking spouse's adultery must also consider the other spouse's conduct in mitigation or defense of the conduct of the alimony-seeking spouse. 367 So.2d at 1018. In other words, as the district court in the instant case stated, "even if the claiming spouse commits adultery, that should not be held against him or her if the non-claiming spouse has likewise sinned." 467 So.2d at 427.
The answer to the certified question now before us is controlled by our decision in Williamson:
 [I]t must be remembered that the primary standards to be used in determining a proper alimony award are the demonstrated need of the spouse seeking alimony and the demonstrated ability of the other spouse to pay. . . . [A]limony is not a weapon to be used solely to punish an errant spouse.
367 So.2d at 1018. See also Claughton, 344 So.2d at 946;Escobar, 300 So.2d at 703.
We candidly acknowledge that although Florida has a so-called no-fault divorce system, section 61.08(1) does appear to retain a vestige of fault by allowing the trial court to consider the adultery of an alimony-seeking spouse. Why this one factor, as opposed to physical abuse, alcoholism, or a multitude of other factors, is included in the statute is not an issue before us. We reaffirm, however, our holding in Williamson that the primary standards to be used in fashioning an equitable alimony award are the needs of one spouse and the ability of the other to pay.[3]
During oral argument before this Court, counsel for petitioner intimated that the pleadings in marital dissolution cases are lengthening and appear to be regressing to the point where the fault of the parties is once again playing a prominent role. In response to this alleged trend, we repeat our admonition inWilliamson.
 For a trial court to perform routinely a balancing act with testimony of alleged marital misconduct of the parties would be a step backward to the days of threats and insinuations which plagued our courts before our no-fault system was enacted and would be directly contrary to express legislative policy.
367 So.2d at 1019. Some of the uses one spouse's adulterous conduct may play in determining entitlement to alimony have previously been discussed. Another permissible use, and one more apparently relevant than was presented in either Escobar orClaughton, has more recently been set forth in Langer v.Langer, 463 So.2d 265 (Fla. 3d DCA 1984). In Langer, the trial court refused to allow the wife to present corroborative evidence of the husband's extensive drug use and his longstanding adulterous affairs. In reversing the trial court on this point, the district court stated:
 In this case, both the adultery and drug use, if as longstanding and extensive as proffered, may have contributed to the depletion of the financial resources of the family and should be admitted on remand.
Id. at 267.
Sub judice, evidence of the adulterous activity of the respondent husband appears to have been presented solely to obtain an increase in the award of alimony. Friends of petitioner testified that news of respondent's adultery "devastated" petitioner. There is, however, neither evidence that this devastation translated into petitioner's greater financial need, nor that the adultery depleted family resources, as in Langer.
The use of adultery as a factor below did not fall within the uses outlined in Escobar or Claughton. In sum, we can *Page 1128 
discern no reason why respondent's adultery should have played a part in fashioning an equitable alimony award. It is apparent from the record that the petitioner's health is poor and that her earning capacity is substantially less than respondent's, thus supporting a distribution skewed in petitioner's favor. However, we are compelled to conclude that the trial court's awarding petitioner roughly 97% of the marital assets, in part because of respondent's adultery, makes this distributional scheme appear to be inequitable, contrary to Tronconi, 466 So.2d at 205 andCanakaris, 382 So.2d at 1204, and also smacks of punishment, contrary to Williamson, 367 So.2d at 1018.
The district court below upheld the award of permanent periodic alimony to petitioner, citing to Canakaris, but concluded that the disproportionate distribution of the joint assets, as lump sum alimony, was an abuse of discretion by the trial court. We agree that the distribution was inequitable and an abuse of the trial court's discretion. However, the district court succumbed to the temptation to fashion its own version of an equitable remedy by reversing the award of the condominium to the petitioner and ordering it awarded to the respondent. The district court's treatment of the award of permanent periodic alimony and lump sum alimony as separate, independent remedies is directly contrary to Canakaris, wherein we noted that the trial court has broad discretionary authority to utilize the various available remedies in order to do equity between the parties:
 As considered by the trial court, these remedies are interrelated; to the extent of their eventual use, the remedies are part of one overall scheme. It is extremely important that they also be reviewed by appellate courts as a whole, rather than independently.
382 So.2d at 1202. Therefore, the trial court should be given an opportunity on remand to reconsider the entire distribution scheme, including the award of both permanent periodic and lump sum alimony, as these are interrelated remedies and part of one overall scheme.
Accordingly, we answer the certified question in the negative, quash the decision of the district court, and remand for proceedings consistent with this opinion.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON and SHAW, JJ., concur.
[1] This language is substantively identical to the current version of the statute.
[2] This language also appears in the current version of the statute.
[3] As more recently explained in Canakaris v. Canakaris, 382 So.2d 1197
(Fla. 1980), the primary standards for determining entitlement to permanent, periodic alimony are the needs of one spouse and the ability of the other spouse to pay. With lump sum alimony, the standards are the justification for such lump sum payment and the "financial ability of the other spouse to make such payment without substantially endangering his or her economic status." Id. at 1201.