501 So.2d 1306 (1986)
Margerie GREEN, Appellant,
v.
Elmer G. GREEN, Appellee.
No. 83-2236.
District Court of Appeal of Florida, Fourth District.
December 3, 1986.
Rehearing and/or Certification Denied March 4, 1987.
Sylvan B. Burdick of Burdick & Daves, West Palm Beach, for appellant.
Larry Klein of Klein & Beranek, P.A., and Sidney A. Stubbs, Jr., of Jones & Foster, West Palm Beach, for appellee.

UPON MOTION FOR REHEARING EN BANC
EN BANC.
This is an appeal from a final judgment in a dissolution of marriage. The majority of the original panel which considered the appeal believed the final judgment should be reversed. Appellee sought rehearing en banc, contending affirmance was necessary to maintain uniformity in this court's decisions. The bases for the alleged conflict were Beville v. Beville, 415 So.2d 151 (Fla. 4th DCA 1982), and Burrows v. Burrows, 384 So.2d 1312 (Fla. 4th DCA 1980). Since commencing consideration en banc we have had the benefit of the supreme court's opinion *1307 in Noah v. Noah, 491 So.2d 1124 (Fla. 1986), which was not available to either the trial judge or the original panel. We grant appellee's motion for rehearing en banc, vacate this court's original opinion and substitute this opinion.
It is apparent from a review of the extensive final judgment in this case that the trial court directed substantial attention to the factors of adultery and the parties' incompatibility. The original panel in this case was concerned about the weight accorded by the trial court to these factors. We share those concerns and conclude that the weight and consideration given to the issue of adultery by the trial court exceeded the limits permitted by Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979). See also Noah v. Noah.
In this case, unlike Williamson, the court is not faced with the problem of having to decide which of the two spouses ought to bear the loss under circumstances where there is not enough to go around. Here, not only is there enough, but it is undisputed that the husband is a millionaire with an income well in excess of $300,000 per year. The parties shared a married life for twelve years and, although Mr. Green was considerably older than his wife, there were two children born of this marriage. Mrs. Green did not complete high school, worked as a waitress, hostess and sales clerk prior to the marriage, and had not worked during the course of their marriage.
The children in this case were raised in a lifestyle totally different from the one they will have to share under the court's award. While the husband, with his income of almost $7,000 per week, and his assets in the millions, will continue to enjoy a lifestyle that enables him to risk $50,000 per year gambling, the wife and children will be living on an income of $1,500 per month child support and an additional $1,000 per month of rehabilitative alimony for seven years. In fairness, we note that the wife, additionally, received as lump sum alimony a new home with respect to which she is not obligated to pay the principal and interest on any mortgage. However, she will have to maintain that home in all respects from taxes to maintenance. It is also significant that the wife will not receive her fifty percent interest in the marital home of the parties inasmuch as the trial court recognized a special equity in the husband arising from his investment in that home of funds acquired prior to the marriage. The result of this will be that the wife will receive barely more than one-fifth of the equity when the home is sold.
The trial court specifically did not fashion any equitable distribution at all of the husband's property, although the wife has no separate property other than her joint interest in their home. Further, it is obvious that none of the funds allocated to the wife as rehabilitative alimony will be available for rehabilitation purposes since obviously these will have to be utilized, together with the child support, to try to maintain a reasonable economic life for the children. It is not clear what rehabilitation was intended, but we note that whether a spouse can actually be rehabilitated to become self-supporting is a factor the trial court should consider in determining whether rehabilitative or permanent periodic alimony is more appropriate. See Allison v. Allison, 491 So.2d 1201 (Fla. 1st DCA 1986).
In Williamson, a case that did not actually involve adultery, the supreme court emphasized the importance of the facts, and how they relate to the economic conditions of the marriage whenever adultery or fault becomes a factor in justifying a distribution or award that would be otherwise inequitable. The Williamson court, in discussing the role to be accorded to adultery or fault in determining alimony pursuant to section 61.08 Florida Statutes, and after recognizing the discretion of the trial court to consider the conduct of the parties in deciding the issues of alimony under some circumstances, said:
[I]t must be remembered that the primary standards to be used in determining a proper alimony award are the demonstrated need of the spouse seeking alimony and the demonstrated ability of the *1308 other spouse to pay... . We do not suggest that these factors may in any way be ignored. As we previously pointed out in Vilas v. Vilas, 153 Fla. 102, 13 So.2d 807 (1943), alimony is not a weapon to be used solely to punish an errant spouse.
367 So.2d at 1018.
The supreme court, in Williamson, cautioned against unnecessary and overextensive inquiry into adultery when not needed in order to do economic justice between the parties. The court emphasized in Williamson that consideration of fault is appropriate where there are "difficult economic circumstances facing both parties." Id. at 1019.
Nothing said in Williamson should be construed to permit evidence of adultery to create an imbalance between the parties with respect to need and ability to pay where economic hardship is not a factor. The supreme court made it clear that we should use great caution when dealing with any type of fault, including adultery, in order to avoid retreating from the sound policy basis reflected in our no-fault system. Id. at 1019. The court, in Williamson, concluded that:
For a trial court to perform routinely a balancing act with testimony of alleged marital misconduct of the parties would be a step backward to the days of threats and insinuations which plagued our courts before our no-fault system was enacted and would be directly contrary to express legislative policy. Therefore, we hold that section 61.08(2), Florida Statutes (1975), which permits a trial court to consider "any factor to do equity and justice between the parties," does not permit a court to conduct an inquiry into every aspect of the marital conduct of the parties as a matter of course. Whether such an inquiry is proper will depend upon the circumstances of each case. Today we hold only that where an analysis of the need of one spouse and the ability of the other to pay demonstrates that both parties will suffer economic hardship as a result of any division of available resources the court might make, the court may then consider, as an equitable circumstances under section 61.08(2), Florida Statutes (1975), any conduct of either party which may have caused the difficult economic situation in which they stand before the court.
Id. at 1019.
It is interesting to note that although the Williamson case predated Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), it is perfectly consistent with that decision in its emphasis on arriving at a financially equitable result.
Williamson v. Williamson should not be read to recognize broad discretion in the trial court in determining the weight to be given evidence of adultery in fashioning alimony under circumstances where it will not result in a financially equitable award. Therefore, applying the standards of Williamson and Canakaris together, we conclude that the trial court in this case abused its discretion.
The supreme court has recently addressed this issue in Noah v. Noah, 491 So.2d 1124 (Fla. 1986), where it approved the opinion of this court (although the opinion was quashed on other grounds) reversing an unequal distribution of assets as part of an equitable distribution to the wife, in part because her husband had been unfaithful. Again, in Noah, the supreme court recognized that consideration of adultery, where appropriate under section 61.08, Florida Statutes (1985), should be limited and not punitive. In Noah, it was determined that the trial court improperly emphasized the husband's considerable adultery, resulting in a disproportionate and inequitable distributional scheme in violation of the principles of Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985), and Canakaris.
In Noah, the court emphasized, as it had in Williamson, that the "primary standards to be used in fashioning an equitable alimony award are the needs of one spouse and the ability of the other to pay." Noah at 1127.
*1309 The supreme court in Noah, after discussing its great concern that there may be developing an undue emphasis upon fault at the trial court level, said (repeating a portion of the language quoted above):
In response to this alleged trend, we repeat our admonition in Williamson:

"For a trial court to perform routinely a balancing act with testimony of alleged marital misconduct of the parties would be a step backwards to the days of threats and insinuations which plagued our courts before our no-fault system was enacted and would be directly contrary to express legislative policy."
Id. at 1127 (quoting Williamson, 367 So.2d at 1019).
It is apparent, from a review of the record and judgment in this case, that adultery and fault became one of the central issues determining the financial award. It has, therefore, received undue weight resulting in an inequitable judgment. As a result the wife has been shortchanged. See Canakaris v. Canakaris; McSwigan v. McSwigan, 450 So.2d 284 (Fla. 4th DCA 1984); Priede v. Priede, 474 So.2d 296 (Fla. 2d DCA 1985); and the dissenting opinion of Judge Cowart in Tuller v. Tuller, 469 So.2d 212 (Fla. 5th DCA 1985). The issue of fault, removed by the legislature as a requirement for dissolution of marriage, should not be expanded beyond that expressly intended by the legislature, in deciding the economic issues between the parties whose union is ending.
Accordingly, we reverse the final judgment of the trial court and remand for reconsideration of the issues of child support, alimony and equitable distribution in accordance with this opinion.
HERSEY, C.J., and DOWNEY, ANSTEAD, DELL and STONE, JJ., concur.
LETTS and GLICKSTEIN, JJ., concur specially with opinions.
WALDEN, J., dissents with opinion in which GUNTHER, J., joins.
LETTS, Judge, concurring specially.
A conclusion to this appeal is overdue and I would not at this stage throw in my ten cents worth, were it not for Judge Walden's comment that he "cannot see a dime's worth of difference between the two opinions."
The original opinion from this court reversed the trial judge because the property distribution to the wife was diminished by a finding that the wife was guilty of adultery. In substitution, the original opinion took the view that the wife's misconduct was financially excusable because of the elderly husband's concomitant failure to provide his young wife, with the warmth caring and affection necessary for her emotional well-being. That reweighing of the evidence, reapportioning the relative importance of the marital shortcomings, is not permissible at the appellate level. The statute specifically allows the trial judge to consider adultery when determining the amount of alimony to be awarded to an adulterous spouse. Accordingly, this appellate court cannot reverse the trier of the fact for affording more weight to the adultery than to the lack of warm affection, when the latter appears nowhere in the statute.
By contrast, the EN BANC opinion, with which I concur, does not reapportion the blame, but quite properly faults the trial judge for "punishing" the wife because of her adulterous conduct especially when economic justice did not require it. See Williamson and Noah. That is a far cry from forgiving the adultery because of lack of warmth and affection.
It is black letter law that an appellate court cannot substitute its judgment for that of a trial court. Pomerantz v. Woodlands Section 8 Association, 479 So.2d 794 (Fla. 4th DCA 1985). I believe that the original opinion did so. It is likewise of exceptional public importance that a district court maintain uniformity in its decisions. Tisdale v. State, 498 So.2d 1280 (Fla. 4th DCA 1986), and Fla.R.App.P. 9.331(a). Ergo, an EN BANC opinion in *1310 this case is most appropriate, albeit in both instances the end result is to agree that the wife was "shortchanged."
GLICKSTEIN, Judge, specially concurring.
I concur with the majority opinion and write, as the sole remaining judge of the panel which originally heard argument on this case in July 1984, only because of the criticism of our deciding this case en banc found in the dissent herein.
The original opinion, Green v. Green, 10 F.L.W. 2440 (Fla. 4th DCA Oct. 30, 1985), is quoted verbatim in the dissent, so the reader can understand the history of the case from square one. As the reader can also see therefrom, Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979) was never mentioned nor reliance placed thereon.
Throughout 1986, there was considerable discussion en banc, before Noah v. Noah, 491 So.2d 1124 (Fla. 1986), as well as a different composition of the court. During the pre-Noah period, this writer, and a number of other judges, were of the opinion that the original opinion in Green had to be undone in order to maintain uniformity in our decisions. As the majority opinion recites, the bases for the alleged nonuniformity or conflict were Beville and Burrows.
In Beville, we reversed what we described as a paltry award and remanded for the trial court to articulate any findings of misconduct to justify the low award, saying:
Marital misconduct by a wife who seeks alimony may well limit or forestall any award, but such misconduct should be articulated, so that a reviewing court can discern what is afoot. Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979).
415 So.2d at 152. Burrows merely repeated the reasonableness test of Canakaris.
Before Noah, the writer  and perhaps other judges as well  had some trouble getting a complete grip on Williamson because its discussion was not as clear to me as it was to its author and some other judges here. Also before Noah, it was difficult for me to justify interference  in light of Canakaris  with the trial court's following findings:
It appears clear that although the marriage relationship was perhaps a "fiery one" it would probably have continued but for the emotional reaction of the Wife and her subsequent affair. Even after the affair was made known to the Husband, the Husband attempted to reconcile the marriage as it relates to the adultery. However, the adulterous relationship continued.
... .
It is restated by the Court that but for the adulterous conduct of the Wife the marriage relationship and the benefits that the Wife and the Husband would have received as a result of that relationship, notwithstanding the rocky or fiery atmosphere, would still be in existence.
Perhaps Noah was just another board, but I believe it really got the attention of this mule as well as some others here. To deny rehearing en banc at this point, in my view, would be to ignore the foregoing history of the case as well as the clarification of the law  at least as perceived by some of us on the court  furnished by Noah, which decision eliminated, for me, the necessity for reversal, and transformed the present majority opinion from its previous posture as a dissent. What could be more complimentary to this court than telling it as it really has been? How unexplainable, and unrealistic, to return the case from an en banc to the original panel, particularly when the sole remaining member of the original panel  for whose sensibilities the dissenter implicitly indicates his concern  could never join, then or now, with Associate Judge Scott's opinion! As our colleague has pointed out in his concurring opinion, the result reached by Judge Scott may have been right  but for the reasons which this court wishes to articulate with its present understanding of Williamson and knowledge of Noah.
*1311 WALDEN, Judge, dissenting.
I dissent as concerns this court's decision to determine this appeal en banc. The initial opinion decided by a three-judge panel was correct[1] and there is no proper basis for a majority of this court to shove it aside *1312 in favor of their new opinion containing language they apparently prefer. In my opinion, this is a significant error which is likely to have far reaching implications in the future.
It is constitutionally provided that on a district court of appeal, three judges, only, shall consider and decide each case.[2] However, Florida Rule of Appellate Procedure 9.331 provides an exception whereby all judges[3] of the court would participate en banc. It is to be noted and emphasized that the rule recites "a rehearing en banc is an extraordinary proceeding."
Only two things operate to trigger this extraordinary en banc procedure. The case must be of "exceptional importance," or, such en banc treatment must be "necessary to maintain uniformity in the court's decisions."
Interestingly, the en banc opinion no where finds or illustrates that either of these criteria are present as a basis for en banc procedure. Since it is an extraordinary procedure  a departure from the constitutional provision  it would seem that it would be desirable for every en banc opinion to carefully document the basis for the procedure. Otherwise, a reader might well wonder if the criteria requirements have been truly met or if, simply, a majority of the judges just chose to nakedly take over the case.
Perhaps a comparison of the two opinions would be fruitful. They are identical in result, both reversing and remanding for reconsideration of the economic issues because the award to the wife was inequitable. They both travel on the basis that the award short-changed the wife because the trial court gave undue weight and consideration *1313 to the wife's adultery without considering the circumstances thereof. For the life of me I cannot see a dime's worth of difference between the two opinions. If I am correct, what will be gained by substituting the en banc opinion? What difference will it make to the court, the litigants and the jurisprudence of this State?
While, of course, the case is of great importance to the Greens, I suggest that it cannot be established or seriously argued that the case is of exceptional importance. It is simply a very common nuts and bolts case of a wife who got shortchanged economically. There is nothing novel or earth-shaking about it. Happens all the time.
Is the en banc opinion necessary to maintain uniformity in the court's decisions? I think not, especially since both opinions reach the same result using the same rationale. The en banc opinion recites that the motion was framed on the uniformity criteria. However, the two cases mentioned there do not support the premise. Moreover, even if a conflict did exist, the en banc opinion would perpetuate it since it is not materially different from the initial opinion.
In sum, I would deny the motion for rehearing en banc and uphold the original opinion authored by the Honorable Robert C. Scott.

OPINION ON REHEARING
PER CURIAM.
The petition for rehearing and/or certification of en banc opinion is hereby denied.
HERSEY, C.J., and DOWNEY, LETTS, GLICKSTEIN, DELL, WALDEN, GUNTHER, and STONE, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with opinion.
ANSTEAD, Judge, concurring in part and dissenting in part.
I would grant the request to certify the issue herein as one of great public importance. Despite the supreme court's opinion in Noah v. Noah, 491 So.2d 1124 (Fla. 1986), there is still a need, in my opinion, for a determination of the purpose and effect of section 61.08(1), Florida Statutes (1985), in a factual situation such as is involved herein. Despite the supreme court's statements in Noah and its earlier comments in Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979), both apparently limiting a trial court's consideration of misconduct, there remains no clear resolution of the policy approved in these decisions and the apparently conflicting signal sent out by section 61.08(1) authorizing the consideration of adultery by trial judges in alimony claims.
NOTES
[1] The initial opinion in this case is as follows: SCOTT, ROBERT C., Associate Judge.

We have before us an appeal of a final judgment in a dissolution of marriage action wherein the wife complains of the financial provisions of the judgment. The salient facts follow.
The parties were married to each other in 1969, the wife being 23 years of age and the husband 52 years old. They remained married for 12 years, during which two children were born of the marriage. The wife had not completed high school. The husband, on the other hand, is a college graduate who, prior to the parties' marriage, had become a millionaire real estate syndicator.
In a financial statement prepared for bank purposes in January 1981, the husband showed a net worth of $10,384,470. In December 1982, some months after the institution of the dissolution of marriage action, the husband's sworn statement for dissolution of marriage purposes indicated his estimated net worth to be $3,875,476.34. Also in December 1982, the husband estimated his net weekly income to be $6,668.46.1 Contemporaneously the husband testified that his family and household expenses, prior to the parties' separation, were $15,000 per month.
Commensurate with the parties' standard of living, capsulized above, the parties resided in a home which had been appraised for $600,000 approximately one year before the commencement of this action. As a noteworthy aside, the husband testified that he put at risk for gambling purposes some $50,000 to $60,000 per year.
The final judgment, assailed by the wife, provides for:
1. The parties to share parental responsibility of their two children, ages ten and nine years, with the Wife to be the custodial parent.
2. Payment by the Husband to the Wife of child support monies of $750.00 per month for each child.
3. Payment by the Husband to the Wife of rehabilitative alimony of $1,000.00 per month for seven years.
4. Lump sum alimony of a home purchased by the Husband for the Wife. The purchase price was $165,000.00. The trial court allowed the Husband to encumber the home but directed that the Husband is solely responsible for the mortgage payments.
5. The Husband was granted a special equity in the parties' marital home to the extent that his interest therein would be 79% and the Wife's interest would be 21%.
At this juncture we note that the trial court implicitly found the wife guilty of adultery. Some of the findings in the trial court's judgment which are particularly significant are:
The Wife at this time is approximately 36 or 37 years old, is very attractive and appears younger than 37 years old.
... .
The Wife's testimony indicates that she has had a tumultuous marriage but indicates that she has been well provided for financially, albeit not emotionally, by her husband during the course of the marriage.
She believes she has contributed to the marriage not only as a homemaker but by extending herself to the assistance of the Husband's ailing mother and one of the Husband's children by a former marriage.
... .
Not by way of excuse but by way of explanation, the Wife attributes her activities of an extramarital nature to the lack of warmth and emotion and understanding of her Husband.
... .
... [T]here is little doubt in the Court's mind that the raising of the children of the parties, as well as the children not of both parties but of one party or the other, has been the primary function of the Wife from an emotional standpoint.
By far the most significant finding of the court follows:
It is a specific finding of this Court that the Wife, even at the age of 23, must have known that a person of the Husband's business standing and business activities would not be an easy-to-live-with life partner.
The dynamics of human beings to amass the type of wealth amassed by the Husband are not achieved by the warm, caring, affectionate, loving-type people that the Wife so earnestly needed for her emotional well-being.
The record indicates that the trial judge's assessment of the husband, implicit in the foregoing specific finding, is quite accurate. However, as a corollary to the foregoing "specific finding" can it be gainsaid that the husband, at age 53 years, must have known that the dynamics of a wife, 30 years his junior, who earnestly needs warmth, caring and affection for her emotional well-being, would not be an easy-to-live-with life partner? We think not. It appears that the parties' marriage simply foundered on the barren rocks of incompatibility for lack of a better word.
If, as the trial court found, the husband failed to meet the needs of the wife for a "warm, affectionate, loving-type [person]," should we invoke the adultery provision of Chapter 61.08(1), Florida Statutes, in order to justify an unconscionably paltry award under the circumstances of this case? We think not.
The trial court bore down heavily upon the wife upon finding her guilty of adultery. However, the trial court failed to consider "the circumstances thereof... ."2 Further, it does not appear that the court considered: "(c) The ... emotional condition of both parties."3
As in Smith v. Smith, 378 So.2d 11 (Fla. 3d DCA 1980), this is not a case in which an errant spouse has destroyed a marriage and now claims benefits equal to those which would have been provided had it remained intact. We quote with approval the following paragraph from Smith:
[E]vidence [of adultery may not] be employed merely to decrease or enhance an award by way of punishment for conduct of which the court may disapprove, when that conduct is not related to the equitable considerations with which dissolution courts should be concerned under our no fault law. McAllister v. McAllister, 345 So.2d 352, 354-355 (Fla. 4th DCA 1977), cert. denied, 357 So.2d 186 (Fla. 1978).
Id. at 15. Adultery is often a symptom of a marriage gone awry  rather than a cause, per se, of the marriage disintegration.
Accordingly, we find that the trial court abused his discretion and we reverse and remand the entire matter for reconsideration and the fashioning of a more equitable award of alimony, child support and equitable distribution.4 Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
1 The husband's 1981 Federal Income Tax return showed income of $304,000. His 1982 income estimate was $346,000.
2 Chap. 61.08(1), Fla. Stat. (1983).
3 Chap. 61.08(2), Fla. Stat. (1983).
4 We note in passing the provision of the final judgment which allows the husband to encumber the wife's house with a mortgage. While this point was not raised directly on appeal, it was alluded to in the wife's brief. This constitutes a clear restraint upon the wife's ability to alienate the property. Clearly the husband can encumber other assets and free the wife's home from the mortgage indebtedness.
[2] Article V, Florida Constitution, provides:

SECTION 4. District courts of appeal. 
(a) ORGANIZATION.  There shall be a district court of appeal serving each appellate district. Each district court of appeal shall consist of at least three judges. Three judges shall consider each case and the concurrence of two shall be necessary to a decision.
[3] Florida Rule of Appellate Procedure 9.331(c)(1) provides:

Generally. A rehearing en banc may be ordered by a district court of appeal on its own motion or on motion of a party. Within the time prescribed by Rule 9.330 and in conjunction with the motion for rehearing, a party may move for an en banc rehearing solely on the grounds that the case is of exceptional importance or that such consideration is necessary to maintain uniformity in the court's decisions. A motion based on any other ground shall be stricken. A vote will not be taken on the motion unless requested by a judge on the panel that heard the proceeding, or by any judge in regular active service on the court. Judges who did not sit on the panel are under no obligation to consider the motion unless a vote is requested.