GLICKSTEIN, Judge.
This is an appeal and cross appeal from a final judgment in a dissolution action. We affirm the cross appeal without discussion. On the main appeal, the trial court did not have the benefit of the supreme court’s decision in Noah v. Noah, 491 So.2d 1124 (Fla.1986), which makes the final judgment legally indefensible in its reduction of the wife's share of equitable distribution. Ac *413 cordingly, we reverse the main appeal for this, as well as other reasons.
I
In Noah v. Noah, this court’s decision that is found at 467 So.2d 426 (Fla.App. 4 Dist., 1985) was reviewed. In this court’s opinion the question was certified as to whether, under Williamson v. Williamson, 367 So.2d 1016 (Fla.1979), the trial court may award virtually all the marital assets to the faithful wife, in part because the husband has been unfaithful. The Florida Supreme Court said the answer was negative.
In Williamson, the Florida Supreme Court had indicated it was all right for the trial court to put the heavier economic burden on the husband who had abandoned the wife and taken a good part of the family savings with him. This was, however, based on the fact that under the facts of Williamson there were not enough assets to allow either former spouse a comfortable existence by him — or herself. The Williamson court approved the reasoning in Claughton v. Claughton, 344 So.2d 944 (Fla. 3d DCA 1977), that when evidence of the alimony-seeking spouse’s adultery is considered, the other spouse’s conduct must also be considered in mitigation or defense of the alimony-seeking spouse’s conduct. The Williamson court also approved the conclusion of the district court in Escobar v. Escobar, 300 So.2d 702 (Fla. 3d DCA 1974), that the trial court may refuse to consider the adultery of the non-alimony-seeking spouse if evidence of that conduct is offered merely to effectuate an alimony award or more alimony.
The Noah court reiterated the admonition in Williamson that it was not proper routinely to consider the alleged marital misconduct of the parties, as was done prior to the no-fault divorce system. Use of evidence of a spouse’s adulterous conduct is permissible in the circumstances of Williamson and Claughton, but the primary standards in deciding about alimony are the recipient’s need and the other spouse’s ability to pay. Another use of evidence of marital misconduct is as in Longer v. hanger, 463 So.2d 265 (Fla. 3d DCA 1984), to show the resulting depletion of marital financial resources, because of the misconduct.
The Supreme Court said that in Noah, where the evidence of respondent husband’s infidelity was presented to affect the amount of the alimony, there was no evidence the conduct depleted the family resources or increased the petitioner’s financial need. Thus, said the Florida Supreme Court, the husband’s infidelity seemed to have no role to play in fashioning an equitable alimony award. The award of some 97% of the marital assets to the wife was therefore inequitable, according to the principles of Tronconi v. Tronconi, 466 So.2d 203 (Fla.1985) and Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), and apparently punitive, contrary to Williamson. Although the Florida Supreme Court agreed with this court’s determination in Noah that the lump sum alimony award constituted an abuse of discretion, the Supreme Court disapproved this court’s fashioning a remedy of its own by reversing a particular part of the award. An appellate court should, as stated in Cana-karis, review the entire scheme of remedies, taken as a whole, and not act on individual pieces, said the Florida Supreme Court.
Here, the trial court’s reduction of the wife’s equitable distribution was occasioned solely by her brief relationship with the man, during her marriage, whom she married after the present dissolution. Under Noah, such reduction was not permissible. See also Green v. Green, 501 So.2d 1306, (Fla. 4th DCA 1986).
II
The second error is with respect to the award to the wife of $90,000 as lump sum alimony over a ten-year period, commencing two years after a two-year period of rehabilitative alimony. The trial court awarded no interest on the $90,000, which was error, particularly because of the circumstances of this case. The trial court reduced the former wife’s lump sum alimony to a specific figure of $150,000 because *414 of the marital misconduct expressly designated in section 61.08(1), Florida Statutes (1988), the legislative remnant of the previous legislative pronouncement of a basis for forfeiture of any award of alimony. By not being awarded interest on the $90,000, payable over the next twelve years, the wife in actuality received a greater punishment than that facially administered by the final judgment.
Accordingly, we remand with direction to amend the final judgment to require the payment of interest to the wife at the statutory rate. We realize that Cotton v. Cotton, 439 So.2d 309 (Fla. 2d DCA 1983), is authority only for the trial court to award interest, not a requirement that it do so. However, we have recited our reasons for its being required here.
III
The third error is with respect to the remainder of the $150,000 lump sum alimony; namely, the $60,000 which the trial court reduced from the original figure because the wife had taken $60,000 of the parties’ assets at the time of separation. We remand with direction to the trial court to eliminate, after subsequent, testimony if necessary, any reasonable sum the wife used, by necessity, for her temporary periodic support after separation for which she was not reimbursed by the husband. The husband cannot be immunized from temporary, periodic support on the basis that his wife took the $60,000, then enjoy a double benefit by having it also reduced from the lump sum alimony award.
We affirm all other aspects of the final judgment that have not been settled by the parties, as announced at oral argument.
IV
We close with two thoughts. First, the children here have been shortchanged, per se, by the breakup of the family. Second, the battle between the parties on every issue that arose between them has apparently resulted in their failure amicably to make financial provision for the higher education of their academically talented children or to require life insurance to secure the payment of child support should the father die during the children’s minority.
GUNTHER and STONE, JJ., concur.