600 So.2d 1140 (1992)
Thomas S. YOUNG, Appellant,
v.
Donna S. YOUNG, Appellee.
No. 91-1314.
District Court of Appeal of Florida, Fifth District.
May 8, 1992.
Rehearing Denied July 10, 1992.
*1141 J. Cheney Mason, P.A., Orlando, for appellant.
Harvey M. Alper, of Massey, Alper & Walden, P.A., Altamonte Springs, for appellee.
COBB, Judge.
Thomas Young appeals the supplemental final judgment rendered in his dissolution of marriage action. The husband argues (1) the court erred in finding that his professional association had transferable goodwill separate from his reputation and in assigning a value to the goodwill; (2) the amount of alimony awarded was so high as to constitute an abuse of the trial court's discretion; and (3) the court erred in failing to set a specific sum the husband was required to pay in premiums in health and life insurance for the wife.
We consider these points in inverse order. In regard to the third issue, we agree with the appellant/husband that his insurance obligation should have been limited to a specific sum commensurate with his current level of premium expense. See Burgess v. Burgess, 576 So.2d 1348 (Fla. 2d DCA 1991); Szemborski v. Szemborski, 530 So.2d 361 (Fla. 5th DCA 1988).
In regard to the second issue, we find that the alimony award of $6,274.00 per month, which will decrease to $4,774.00 per month after three years, was within the ambit of the trial court's broad discretion in view of the husband's ample income. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
The most difficult issue posed by this appeal is the first one: the legal validity of the trial court's determination that the goodwill of the professional association of the husband, a sole practitioner in obstetrics and gynecology, was a marital asset carrying a value of $250,000.00, for which the wife was entitled to be paid $125,000.00. The trial judge stated that she was bound by the recent Florida Supreme Court decision in Thompson v. Thompson, 576 So.2d 267 (Fla. 1991), to make an equitable distribution of the goodwill of the husband's medical practice.
In Thompson, the Florida Supreme Court held:
If a law practice has monetary value over and above its tangible assets and cases in progress which is separate and distinct from the presence and reputation of the individual attorney, then a court should consider the goodwill accumulated during the marriage as a marital asset. [Footnote omitted].
Thompson at 270. The court emphasized that for goodwill to be a marital asset, it must exist separate and apart from the reputation or continued presence of the marital litigant or the tangible assets.[1] It is incumbent upon the claiming party to produce evidence demonstrating the discrete existence of that goodwill. Once that is done, said the court, then the exclusive method of measuring the value of that goodwill entails a fair market value approach  i.e., what a willing buyer would pay, and a willing seller would accept, neither acting under duress. Thompson at 270.
The husband's expert, one Michael Mard, found the economic net worth of the professional association to be $88,547.00 and placed excess earnings at $204,599.00. The total of the two equals fair market value, he testified, and the excess earnings represent goodwill. Mard testified, however, that using the accounting approach required by the supreme court in Thompson left him no way to determine what amount of the excess earnings should be allocated to the husband for his personality, presence *1142 and reputation. Mard concluded that most of the value of Dr. Young's professional practice was based on the latter's personal demeanor and philosophy; if Dr. Young were taken away from the practice, he testified, then "there is no data to support any amount [as goodwill] in this $204,000.00."
The wife's expert, one Richard Johnson, testified he did not use a market approach in evaluating goodwill. Instead, he analyzed the production (which he equated with gross billings) and simply took half the production of the previous year as a good rule of thumb for determining goodwill. He then added the value of the real assets to the value assigned to goodwill. If one half production plus tangible assets is less than total production, then he assumes that he is in the ball park in regard to his value of goodwill. He assumed that after being sold the practice would continue to generate the same production figures. He set the value of goodwill at not less than $400,000.00.
The trial judge did not agree in toto with either expert, neither of whom used the fair market value approach mandated by Thompson. She found that the husband's expert did not utilize a "real world" method of goodwill evaluation, and that the wife's expert gave his testimony "without any foundation in economic theory." Nevertheless, the trial judge then selected a figure of $250,000.00 as the value of goodwill, approximately splitting the difference between the two experts, and ordered the husband to pay the wife $125,000.00 for her half interest in this asset.
We believe that the trial judge has misconstrued the holding in Thompson. That decision does not require a finding of goodwill; it merely provides that goodwill may be an asset subject to equitable distribution if there is evidence to support its existence apart from the reputation and presence of the practicing party and the tangible assets. Proof of the existence of goodwill is the first step. In Hanson v. Hanson, 738 S.W.2d 429 (Mo. 1987) (en banc), cited with approval by the supreme court in Thompson, the court stated:
Proof of the existence of good will is particularly troublesome in a professional context. This difficulty is a product of the fact that the reputation of the individual practitioner and the good will of his enterprise are often inextricably interwoven. Because of the difficulties inherent in separating the reputation of the professional from that of his enterprise, evidence that other professionals are willing to pay for good will when acquiring a practice is, in our view, the only acceptable evidence of the existence of good will. Thus, as a matter of proof, the existence of good will is shown only when there is evidence of a recent actual sale of a similarly situated professional practice, an offer to purchase such a practice, or expert testimony and testimony of members of the subject profession as to the existence of good will in a similar practice in the relevant geographic and professional market. Absent such evidence, one can only speculate as to the existence of good will. Divisions of marital property may not be based on speculation as to the very existence of the property being divided. [Footnote omitted].
Id. at 435.
In the instant case there was a complete absence of evidence of the existence of goodwill separate from reputation and tangible assets. This fact alone requires the reversal of that portion of the court order requiring the husband to pay $125,000 to the wife for goodwill. Additionally, even assuming the existence of goodwill had been demonstrated, neither expert gave competent, credible testimony as to the value of that goodwill. The husband's expert admitted being unable to separate goodwill from reputation. The wife's expert used a nonsensical rule of thumb to arrive at an inflated figure.[2] Accordingly, *1143 there was no competent or credible testimony from which the trial court could find and evaluate goodwill as a marital asset.
Pursuant to the criteria outlined in Thompson, we reverse the $125,000.00 award to the wife. There is no reasonable basis for us to disturb or reopen the remaining distribution scheme ordered below. Neither party has suffered any greater loss than the other by recognition of the fact that the husband's professional association has no value separate and distinct from his reputation and presence and the value of tangible assets. The reason for this is that the invalidation of an equal division of a nonexistent asset cannot logically impair the equity of the remaining judgment, with one possible exception. That exception is the trial court's denial of attorney fees to the wife, a determination which may or may not be affected by the unavailability of the $125,000.00 award. That is a matter which the trial court should have discretion to reconsider in light of this opinion and the provisions of section 61.16, Florida Statutes (1991). See Nichols v. Nichols, 519 So.2d 620, 621-622 (Fla. 1988); Cummings v. Cummings, 330 So.2d 134 (Fla. 1976).
Accordingly, we affirm the trial court's alimony award, reverse the trial court's finding and award in respect to the goodwill of the husband's medical practice, and remand for the trial court to determine a specific sum payable by the husband for the wife's health and life insurance, and to reconsider, at its discretion, the motion for an award of attorney fees to the wife.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
COWART, J., concurs.
GOSHORN, C.J., concurs specially with opinion.
GOSHORN, Chief Judge, concurring specially.
While I agree that the trial court's determination of the goodwill value of the husband's professional association must be reversed because the value of goodwill was not determined by using the fair market value method directed by Thompson v. Thompson, 576 So.2d 267 (Fla. 1991), I disagree with the majority's analysis of Thompson. The majority concludes that before the fair market value method can be applied, the spouse seeking equitable distribution of goodwill must first produce evidence of its existence separate and apart from reputation. Obviously, this is an impossible task, as demonstrated by the expert testimony in this case, and effectively emasculates the holding in Thompson. I do not believe the supreme court intended to adopt a rule that is impossible to apply in practice. Contrary to the majority's analysis, I believe the valuation method adopted in Thompson automatically separates reputation from the other elements of goodwill.
The fair market value approach adopted in Thompson as the exclusive method of evaluating the goodwill of a professional association requires the court to determine the amount of money that a willing buyer would pay a willing seller.[1] It is obvious that a willing buyer would not pay for that which he is not getting. A willing seller of the assets of a professional association, once he sells, is no longer part of the business, and therefore the seller's reputation cannot be part of the goodwill a willing buyer is purchasing. Thus, the fair market value method has, by definition, separated professional reputation from the remaining elements of goodwill, such as established patients, referrals, location, associations, and office organizations which may attach to the buyer.
*1144 I concur with the majority opinion that the failure of the trial court to limit the appellant/husband's health insurance obligation to his ex-wife to a specific sum requires reversal. I also agree with the affirmance of the alimony award.
NOTES
[1] Location, as an asset, has both tangible and intangible aspects. For example, the ownership of realty or a leasehold interest therein is tangible. The intangible aspect, which may constitute goodwill, has been defined as "the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the general practitioner." See Thompson v. Thompson, 576 So.2d 267, 269 (Fla. 1991).
[2] In fairness to these expert witnesses at trial, we recognize that the attempt to determine the goodwill value of the business of a sole professional practitioner, absent consideration of his reputation, presence and tangible assets, is somewhat akin to a metaphysical quest for the sound of one hand clapping. Nevertheless, we must apply the semantic strictures of Thompson to the opinion testimony adduced at trial in respect to the elusive concept of goodwill.
[1] In adopting the fair market value method, the court rejected numerous other methods for valuing goodwill. Thompson, 576 So.2d at 270 (citing In re Hall, 103 Wash.2d 236, 692 P.2d 175 (1984)). The court also held that comparable sales are not required for an expert to form an opinion as to value. Id.