634 So.2d 775 (1994)
Michael Lawrence WEINSTOCK, Appellant,
v.
Ronda C. WEINSTOCK, Appellee.
No. 92-2911.
District Court of Appeal of Florida, Fifth District.
March 31, 1994.
*776 Richard D. West of Richard D. West, P.A., Orlando, and Samuel J. Weiss, of Samuel J. Weiss, P.A., Winter Park, for appellant.
J. Cheney Mason of J. Cheney Mason, P.A., Orlando, for appellee.
PETERSON, Judge.
This appeal involves the valuation of goodwill attributable to a professional practice for the purpose of making an equitable distribution in a marital dissolution. In Thompson v. Thompson, 576 So.2d 267 (Fla. 1991) the supreme court held that goodwill may be factored in determining the value of a professional practice. In answering the certified question involving the goodwill of a law practice the court stated:
If a law practice has monetary value over and above its tangible assets and cases in progress which is separate and distinct from the presence and reputation of the individual attorney, then a court should consider the goodwill accumulated during the marriage as a marital asset. The determination of the existence and value of goodwill is a question of fact and should be made on a case-by-case basis with the assistance of expert testimony.
Thompson at 270.
In Young v. Young, 600 So.2d 1140 (Fla. 5th DCA), rev. denied, 613 So.2d 13 (Fla. 1992), this court considered, in light of the Thompson opinion, the valuation methods of two expert appraisers. In Young we concluded that neither appraisal conformed to the Thompson formula and rejected both. The experts' opinions in Young were rejected because they failed to use the fair market value approach mandated by Thompson. In Young, the husband's expert, Michael Mard, testified that he first arrived at an "economic net worth" of the husband's medical practice and then determined "excess earnings." The "excess earnings" represented goodwill, but, by using such an approach, he could not determine what portion of the excess earnings should be allocated for personality, presence and reputation. Mard concluded that since most of the value of goodwill was attributable to the husband's personal demeanor and philosophy, any goodwill could not be supported if the husband was removed from the practice. The wife's expert created a "nonsensical rule of thumb to arrive at an inflated figure" by simply equating goodwill to one-half of the prior year's gross billings. Young, 600 So.2d at 1142.
Mard was also the husband's expert witness on valuation in the instant case and based his appraisal on the "excess earnings" approach disapproved in Young. He testified that part of the value of the husband's dental practice was attributable to goodwill, but that there was no way to prove that goodwill existed independently of the husband's goodwill, that is, his personal demeanor, philosophy and reputation.
The wife's expert witness presented an appraisal that differs from the ones presented in Young. Her expert was a dentist who has become a consultant for dentists and other health care professionals who are in need of an evaluation of a practice for the *777 purpose of sales, purchases, loans and dissolution proceedings. This appraiser reviewed the husband's appraisal prepared by Mard and financial records of the practice. He compared gross sales of eleven other similar Florida dental practices sold between 1991 and 1992 and opined that the husband's practice, apart from tangible assets and accounts receivable, was worth from $300,000 to $440,000. The trial court found the goodwill to be worth $300,000, the tangible assets $40,000, and accounts receivable $65,000 for a total value of the practice at $405,000.
The husband argues that the wife's appraiser failed to reduce goodwill by the Thompson requirement that personal goodwill be subtracted based upon the reputation and presence of the practitioner. Judge Goshorn addressed this problem in his concurring opinion in Young. He noted that producing evidence that goodwill exists separate and apart from a professional's reputation is impossible but that the Thompson valuation method automatically separates reputation from the other elements of goodwill. He reasoned that:
The fair market value approach adopted in Thompson as an exclusive method of evaluating the goodwill of a professional association requires the court to determine the amount of money that a willing buyer would pay a willing seller. It is obvious that a willing buyer would not pay for that which he is not getting. A willing seller of the assets of a professional association, once he sells, is no longer part of the business, and therefore the seller's reputation cannot be part of the goodwill a willing buyer is purchasing. Thus, the fair market value method has, by definition, separated professional reputation from the remaining elements of goodwill, such as established patients, referrals, location, associations, and office organizations which may attach to the buyer.
Young, 600 So.2d at 1143 (Goshorn, C.J., concurring) (footnote omitted) (emphasis added).
In Thompson, the supreme court directed that the fair market value approach is to be used as the exclusive method of measuring the goodwill of a professional association. The court described the fair market value approach in traditional terms as "what would a willing buyer pay, and what would a willing seller accept, neither acting under duress for a sale of the business." Thompson, 576 So.2d at 270. However, the fair market value does not include the continued presence of the marital litigant or the continuing influence of the personality and reputation of the litigant upon patients after the sale:
[I]f goodwill depends upon the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual. Any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity, which, although relevant in determining alimony, is not a proper consideration in dividing marital property in a dissolution proceeding.
Thompson, 576 So.2d at 270, quoting Taylor v. Taylor, 222 Neb. 721, 731, 386 N.W.2d 851, 858 (1986).
In the instant case, the testimony of the wife's expert indicates that in the comparables used to value the husband's practice, "quite often the seller will sell the practice and remain with the practice for a year or two after the sale." During cross-examination, the witness indicated that in all of the comparables relied upon for the valuation at trial the selling dentists continued to practice at the location for some time after the sale. There were no comparables in which the presence of the selling dentist was discontinued. The testimony of the wife's expert on this point during cross-examination by the husband's attorney follows:
Q. Okay. I guess the Lakeland, 1990 sale would be different. The Clearwater  let me see, there was one, two Clearwaters for 1990. In how many of these cases did the dentist not stay on, or the dentists?
A. When you say "not stay on", you mean leave within a short period of time, a few weeks after the sale?
Q. Picks the check up at the closing, walks out the door, gone. Any of them?

*778 A. Clearwater, but we're not using Clearwater.
Q. Right, right.
A. Clearwater wasn't 
Q. We're not using the 1990 Clearwater.
A. Yes.
MR. MASON: No. All right. Just a minute. Counsel doesn't say what we're using or not using. We're not using a 1990. That certainly is a 
THE COURT: She's not asking about that.
MR. MASON: We are using it.
THE COURT: I understand.
BY MS. WEBER:
Q. So, none; is that a none?
A. None of the ones that you have asked me questions about, we were considering, from your perspective, could be used.
Q. Okay. So, then in none of them the guy died and you were dealing with an estate for the seller?
A. None of these particular sales, that's correct.
It is an inescapable conclusion that none of the comparables included a situation where a selling professional did not remain with the buyer in the conduct of the professional practice for a period of time after the closing of the sale. The wife's counsel asked no questions on redirect examination that would allow one to conclude otherwise. The comparables used cannot serve as competent evidence of value in view of the language in Thompson that "such goodwill, to be a marital asset, must exist separate and apart from the reputation or continued presence of the marital litigant." Thompson, 576 So.2d at 270. The wife's expert opinion also would not be competent evidence under Judge Goshorn's reasoning in Young since there was no attempt to deal with the problem of the continued presence of the dentists after the comparable sales took place.
We believe that husband's counsel asked appropriate questions upon cross-examination of the witness that may have ferreted out the proper method for determining the value of goodwill. She asked whether any of the comparables were for a dentist who "just quit." The purest form of comparable in the sale of any business would be a sale in which, on the day of closing, the seller simply picks up the sales proceeds and retires or moves out of the area, thus eliminating any further personal influence the seller could have on the business.
The inclusion of the goodwill as a marital asset was improper because the evidence failed to establish a value for this goodwill apart from the husband's continued presence. However, because the monthly cash flow to the wife and payments by the husband will be substantially decreased in the absence of any asset value being assigned to goodwill, the entire scheme of alimony and equitable distribution of assets is vacated. See Noah v. Noah, 491 So.2d 1124, 1128 (Fla. 1986) ("[T]he trial court should be given an opportunity on remand to reconsider the entire distribution scheme, including ... alimony, as these are interrelated remedies and part of one overall scheme."). On remand, the trial court shall refashion an equitable distribution of the marital assets excluding the "goodwill" as an asset and reconsider the amount of alimony to be awarded.
The final judgment of dissolution is vacated except that portion that dissolves the marriage.
VACATED IN PART; REMANDED.
GOSHORN, J., concurs.
W. SHARP, J., dissents with opinion.
W. SHARP, Judge, dissenting.
I respectfully dissent. In my view, the evidence adduced at trial was sufficient to support the trial judge's finding the former husband's dental practice was worth a total of $405,000, composed of goodwill ($300,000), tangible assets ($40,000) and accounts receivable ($65,000). The finding that goodwill existed in this professional practice was based on expert testimony consistent with Thompson v. Thompson, 576 So.2d 267 (Fla. 1991). Indeed, if the finding was erroneous in this case, I question whether such a finding can be sustained in any case involving a sole professional practice.
*779 The evidence showed that the former husband, age forty-eight, had had an established dental practice in Altamonte Springs for over twenty years, at the same location. He operated his practice under different trade names rather than using his surname: Florida Dental Implant Group, followed by Florida Implant Institute, followed by The Cranial Facial Diagnostic and Treatment Center. Two-thirds of his practice was specialized: implants and temporal mandibular joint problems. One-third was general dentistry.
David Griggs, the wife's expert witness, testified he became licensed to practice dentistry in Florida, in 1975. Since 1982, he has been in the business of valuing dental practices in Florida and other states, for the purpose of assisting dentists in buying and selling dental practices. He currently is the vice president of a dental brokerage firm in Atlanta. He has made over 1,000 evaluations of dental practices since 1982.
He testified he uses various data in making evaluations, including analyzing tax returns and comparable sales of similar dental practices in similar demographic areas. He said gross sales had the most impact setting a sales price, since it is the leading indicator of a purchaser's net return following the sale of the particular practice.[1] Dr. Weinstock's practice grossed $639,000 the prior year; his compensation from the practice was at least $177,000.
Griggs testified Weinstock's practice had added value due to the fact it had been operating at the same location for such a long time (twenty years); and was operated under a trade name. As such it has good "name recognition," which could continue to be used by a purchasing dentist. He also testified the Orlando, Central Florida area is a strong market and a desirable location for a dental practice.
In valuing Dr. Weinstock's practice, Griggs relied upon eleven comparable sales of dental practices in the Central Florida area from 1989 to 1992. He provided this sales data, based on his personal knowledge.

DATE LOCATION GROSS SALES SALES PRICE
1992 Orlando $ 360,000 $248,000
1992 Orlando/Maitland $ 416,000 $275,000
1987 Orlando $ 300,000 $190,000
1992 Orlando/Maitland $ 112,000 $ 75,000
1990 Venice $1,200,000 $620,000
1990 Lakeland (Buy-in) $ 293,500 $202,000
1990 Clearwater $ 624,000 $378,000
1990 Clearwater $ 120,000 $ 65,000
1992 Tallahassee $ 730,000 $542,000
1992 Tallahassee $ 646,000 $342,000
1991 Clearwater $ 450,000 $320,000

Griggs testified Dr. Weinstock's practice could be sold for between $300,000 to $440,000.
He also testified this practice has considerable "goodwill" value. He defined "goodwill" as the amount the fair market value of the practice exceeds the value of the tangible assets. As is often the case, the goodwill value is by far the largest component of a dental practice's overall value.
Griggs stated the practice's sale price could vary from $300,000 to $440,000 depending on the number of new patients and a satisfactory covenant not to compete. Normally, he said, the selling dentist agrees not to compete with the purchasing dentist within a range of seven to ten miles of the location of the practice for a five-year period of time. If such a covenant were not included, no dentist would be willing to purchase the practice. Also, in connection with such sales, the selling dentist usually agrees not to solicit patients in the practice being sold, for an indefinite period of time.
*780 Most sales, Griggs said, also involve some form of seller-dentist financing. The buyer pays $30,000 to $50,000 at closing. The balance is paid over a 7 to 10 year time period. Although not discussed by the parties, this time pay-out obviously would reduce the present value of the dental practice. However, that is not a critical issue in this case because the $185,000 lump sum alimony award (to carry out the equitable distribution of marital assets) was set by the trial court to be paid periodically over a 10 year time period.
Griggs did testify that quite often the selling dentist remains with the practice for a year or two after the sale. He said that the selling dentist's staying on might add to the value of the sale, but it might also detract from it. The selling dentist would continue to be compensated out of the practice, thereby reducing the purchaser's net return. For most of the comparable sales he testified about (although it is not clear from this record all of them were in this category)[2] the selling dentist did not walk away from the sold practice immediately.
In my view, I do not consider the necessity for a non-compete and non-solicitation agreement in order to produce a willing purchaser of a dental practice as fatal to the trial judge's conclusion that this dental practice had a goodwill value. Nor do I think Griggs' comparable sales data should be thrown out as insufficient because in most of the sales, the selling dentist remained with the practice for a short period of time. As Griggs testified, staying on in the practice was something a buyer sometimes requested, but not always. His opinion about the value of this practice was necessarily theoretical since Dr. Weinstock was not trying to sell the dental practice. But his opinion did not require that Dr. Weinstock remain with the practice to give it value. Based on his testimony, the only essentials were a non-compete and non-solicitation agreement, to prevent a seller from being able to destroy a dental practice, after having sold it.
In Thompson, the Florida Supreme Court said the goodwill of a professional practice could be valued and considered a marital asset "if it exists." It defined goodwill as the value of the ongoing business entity, or "the tendency of clients/patients to return to ... the practice;" and "the expectation of continued public patronage." 576 So.2d at 269. The best method to demonstrating its existence and value is to show the amount of money that a willing seller of such a practice would accept from a willing buyer.[3] If that market value exceeds the value of the hard assets (equipment, cash and accounts receivable) that is proof that goodwill exists and what it is worth.[4]
The court in Thompson said proof of both the value and the existence of goodwill should be by market or sales data. But the court also said actual comparable sales were not required, so long as there was a reasonable basis for an expert witness' opinion concerning its existence and range of value. *781 Griggs' testimony in this case clearly established he was knowledgeable about sales of dental practices, the market for such practices and a range of sales prices. As a broker of dental practices, he was clearly qualified to testify about the existence of such a market, and what Dr. Weinstock's practice might sell for, to a willing and qualified dentist, whether or not Dr. Weinstock stayed in the practice for a short time.
I agree with the Washington Supreme Court in In Matter of Marriage of Fleege, 91 Wash.2d 324, 588 P.2d 1136 (1979), that the fact that a professional may stay on with a practice for a short time to facilitate the transition to a purchaser does not mean there is no goodwill subject to equitable distribution. In Fleege, the husband/dentist argued that his practice had no goodwill because it could not be successfully transferred to a purchaser without certain services being performed by the selling practitioner. These services consisted of an introduction to the seller's patients and encouragement of the patients to accept the buyer as their dentist. The husband argued that the amount purportedly paid for goodwill was in fact paid for these services and represents future earnings which are not subject to division in a dissolution action.
The Washington Supreme Court rejected these arguments. The court noted that the husband had attempted to sell his practice through advertisements in professional periodicals and that numerous similar advertisements appeared in these journals. Each described the object for sale as a "dental practice" and only one or two contained an offer to stay and introduce the purchaser to the seller's patients. Even assuming that such services were necessary, the court did not consider these services to constitute goodwill but rather were simply the means of transferring this goodwill. The court also noted that the advertisements constituted convincing evidence that there was a market for the sale of dental practices and that these practices included much more than their equipment and accounts receivable. See also 11 Fair Share 7 (Apr. 1991) (noting that it is a common practice when an accounting practice is sold for the selling price to be dependent on and adjusted upon client retention and such an arrangement results in the buyer and seller working together to keep the clients satisfied).
If the evidence in this case is not sufficient to allow the majority to affirm the trial court, there was (in my view) adequate evidence to show this dental practice has a commercial value much in excess of its "hard" assets. In circumstances such as this, where a party may have a valid claim but the evidence was inadequate, courts have remanded to give the party an opportunity to establish the claim.[5] This court has done so in the past.[6] The courts have also done so in dissolution actions.[7] Rather than totally excluding goodwill *782 as a marital asset in this case, I think this cause should be remanded for the court to reconsider the existence of goodwill and its value, if any, as was done in Ombres v. Ombres, 596 So.2d 956 (Fla. 1991). This is my fall-back position in this case because goodwill is apparently such a large component of the value of this dental practice, and because the appellate decisions in this area were still evolving when the trial in this case took place.
NOTES
[1] The expected receipts the practice will be able to produce after the sale is the acid test. See In re Marriage of Lopez, 38 Cal. App.3d 93, 113 Cal. Rptr. 58 (3d Dist. 1974), disapproved on other grounds, In re Marriage of Morrison, 20 Cal.3d 437, 143 Cal. Rptr. 139, 573 P.2d 41 (1978).
[2] The colloquy follows:

Q. [by husband's counsel]: Okay. I guess the Lakeland, 1990 Sale would be different. The Clearwater  let me see, there was one, two Clearwaters for 1990. In how many of these cases did the dentist not stay on, or the dentists?
A. [Griggs]: When you say "not stay on", you mean leave within a short period of time, a few weeks after the sale?
Q. Picks the check up at the closing, walks 3 out the door, gone. Any of them?
A. Clearwater, but we're not using Clearwater.
Q. Right, right.
A. Clearwater wasn't 
Q. We're not using the 1990 Clearwater.
A. Yes.
MR. MASON [wife's counsel]: No. All right. Just a minute. Counsel doesn't say what we're using or not using. We're not using a 1990. That certainly is a 
THE COURT: She's not asking about that.
MR. MASON: We are using it.
BY MS. WEBER:
Q. So, none; is that a none?
A. None of the ones that you have asked me questions about, we were considering, from your perspective, could be used.
[3] See Young v. Young, 600 So.2d 1140 (Fla. 5th DCA) (Goshorn, J., concurring specially), rev. denied, 613 So.2d 13 (Fla. 1992). See also Hanson v. Hanson, 738 S.W.2d 429 (Mo. 1987). This automatically separates out the skill and reputation of the selling professional.
[4] See Makowski v. Makowski, 613 So.2d 924 (Fla. 3d DCA 1993).
[5] See, e.g., Smith v. Smith, 108 So.2d 761 (Fla. 1959) (although evidence attempting to establish constructive trust was insufficient, cause was remanded for the appellee to be given a further opportunity to establish her claim with more specific evidence); Atlantic & Gulf Properties, Inc. v. Palmer, 109 So.2d 768 (Fla. 3d DCA 1959) (where there is an insufficiency of evidence as to leave a material point in controversy uncertain, and such point is covered by the pleadings, and it appears that additional evidence is available and justice seems to require a more complete development of the rights of the parties under the law, the cause may be remanded with directions to take further evidence on the issue).
[6] See Brumlik v. Palmer, 407 So.2d 1058 (Fla. 5th DCA 1981) (because neither the pleadings, amendments nor proof supported the relief granted, cause was reversed and remanded for repleading and retrial).
[7] See, e.g., Dozier v. Dozier, 606 So.2d 477 (Fla. 1st DCA 1992) (evidence was insufficient to allow appellate court to determine whether trial judge's treatment of husband's settlement proceeds was appropriate, precluding determination of whether marital assets and liabilities had been equitably distributed; cause was remanded for further proceedings and on remand, the trial judge was to direct the parties to present such additional evidence as may be required to make an informed decision regarding equitable distribution); Moon v. Moon, 594 So.2d 819 (Fla. 1st DCA 1992) (cause remanded for reevaluation of husband's retirement account; since record contains figures for only two fiscal years, parties on remand directed to introduce further evidence); Kirkland v. Kirkland, 568 So.2d 494 (Fla. 1st DCA 1990) (where evidence did not support the court's determination of the present value of the husband's pension plan, the cause was reversed and remanded for the trial judge to make further findings of fact and to equitably distribute the husband's pension); Peerenboom v. Peerenboom, 147 Wis.2d 547, 433 N.W.2d 282 (Wis.App. 1988) (because the trial court failed to value the dental practice on sufficient evidence and adequate reasoning, the judgment relative to the valuation of the dental practice was reversed and the cause remanded to the trial court to determine whether goodwill exists and if so, its value; in order to make appropriate findings, the trial court may elect to receive additional evidence).