912 So.2d 637 (2005)
Kenneth HELD, Appellant,
v.
Renee HELD, Appellee.
No. 4D04-1432.
District Court of Appeal of Florida, Fourth District.
September 7, 2005.
Rehearing Denied November 2, 2005.
Terrence P. O'Connor of Morgan, Carratt and O'Connor, P.A., Fort Lauderdale, for appellant.
Roberta G. Stanley, Harris K. Solomon, and Jonathan M. Streisfeld of Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, Fort Lauderdale, for appellee.
*638 GROSS, J.
The major issue we address in this dissolution case is whether the trial court correctly valued the goodwill in an insurance agency as part of the equitable distribution of the assets of the marriage. We hold that the trial court erroneously included aspects of the husband's personal goodwill in its valuation of the business's enterprise goodwill contrary to the requirements of Thompson v. Thompson, 576 So.2d 267 (Fla.1991).
Early in the 33 year marriage, the husband was a school teacher. After his father died, the husband took over his father's family-owned, general insurance agency, Joseph Held Company. The husband inherited a portion of the business; later he acquired 100% ownership.
In 1979, the husband changed the focus of the agency to specialize in selling high-risk hazard insurance to beachfront condominiums. After that time, he sold policies primarily to condominium associations in Florida. At the time of the final hearing, the company maintained 60 customer accounts, which generated large commissions.
The trial court determined that the entire value of the Company was a marital asset. The parties stipulated to an adjusted book value of $2,918,655. The parties hotly contested both the existence and value of the Company's enterprise goodwill, above the adjusted book value. The trial court valued the Company at $10,500,000, deciding that its enterprise goodwill was $7,581,345. The Company's enterprise goodwill comprised 37% of the assets equitably distributed by the final judgment.
To arrive at its valuation, the court relied mostly upon the testimony of the wife's expert, Jim Gilbert. Central to the court's determination of fair market value, which included enterprise goodwill, was the court's assumption that in any sale of the business, the husband would sign a non-solicitation/non-piracy agreement preventing him from doing business with the Company's existing customers. The trial judge reasoned that the non-solicitation agreement had nothing to do with personal goodwill of the business, but was part of enterprise goodwill. The court wrote that
[A]s part of the sale of enterprise goodwill,. . . a nonsolicitation/non-piracy agreement would need to be signed by the Husband but not a covenant not to compete. Contrary to the Husband's assertions, such a requirement is not indicative of personal goodwill, as a non-compete clause might be. The non-solicitation/non-piracy clause prevents the seller from soliciting only those clients which he has just sold, but enables him to continue in the same trade or business, even if across the street. Specifically, a non-solicitation/non-piracy clause is a clause that prevents the Husband from stealing back the book of business to be sold as part of the ... ($10,500,000.00) to the theoretical buyer. Based upon the evidence, it is clear that a non-compete agreement, which would restrict the Husband's right to sell insurance in the geographic area in which [Joseph Held Company] conducts its business, for a limited period of time, would not be required with the sale of [Joseph Held Company]. [Joseph Held Company] had, as of the valuation date, approximately sixty (60) customers. The Court finds that there are 6,000-7,000 condominiums in Dade, Broward and Palm Beach County, Florida and that in determining the fair market value of [Joseph Held Company], Mr. Gilbert assumed the Husband could continue to work in the insurance business in South Florida, could continue to solicit all of the condominium associations in South Florida, other than the approximately *639 sixty (60) that would be transferred as part of the sale of [Joseph Held Company]. The purchaser would not be benefiting from any personal goodwill of the Husband as the Husband could be a direct competitor except for the sixty (60) customers who where sold as part of [Joseph Held Company].
(Emphasis added).
Thompson is the seminal Florida case concerning the goodwill of a business as a marital asset. Thompson confronted the issue of how to value a professional association's goodwill in a dissolution of marriage case in which the owner of the association is a party. Thompson distinguishes between personal goodwill, which derives from a person's reputation, and enterprise goodwill, which is "separate and distinct from the presence and reputation" of an individual. Id. at 270. Only enterprise goodwill may be included in an equitable distribution scheme in a dissolution case. Id.
The supreme court described enterprise goodwill as "property of an intangible nature commonly defined as the expectation of continued public patronage." Id. at 269[1] (citation omitted). Thompson cited with approval the Missouri supreme court's definition of goodwill in Hanson v. Hanson, 738 S.W.2d 429 (Mo.1987)that goodwill within a professional practice constituted the "value of the practice which exceeds its tangible assets and which is the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner." Thompson, 576 So.2d at 269. The court then noted that personal goodwill represented a person's probable future earning capacity, which was not a proper consideration in the equitable distribution of assets, although it would be relevant to determine alimony. Id. at 270 (citing Taylor v. Taylor, 222 Neb. 721, 386 N.W.2d 851 (1986)). Personal goodwill should not be included in the value of a professional practice for purposes of equitable distribution. Thompson, 576 So.2d at 270.
Thompson directed that the fair market value approach be used as the "exclusive method" of measuring goodwill of a professional practice, which it described as "what a willing buyer would pay, and what a willing seller would accept, neither acting under duress for a sale of the business." Id. "The excess over assets would represent goodwill. .... Actual comparable sales are not required, so long as a reliable and reasonable basis exists for an expert to form an opinion." *640 Id. In considering other sales for the purpose of valuation, "the sale must be one [that] eliminates any further personal influence which the seller might have over the business." Walton v. Walton, 657 So.2d 1214, 1215 (Fla. 4th DCA 1995); see also Weinstock v. Weinstock, 634 So.2d 775, 778 (Fla. 5th DCA 1994).
In Walton, we applied Thompson to a case involving the goodwill of a spouse's C.P.A. practice that had been included in an equitable distribution of assets in a divorce. The husband valued his practice at $41,733, the value of the hard assets in the corporation; the wife's expert adopted a figure some $40,000 higher, representing the "institutional goodwill" of the business. Walton, 657 So.2d at 1216. The trial court "valued the business in accordance with the testimony of the wife's expert." Id.
We reversed, because "[there was] no competent evidence from which the trial court could have determined the existence of goodwill separate from the reputation of the husband." Id. at 1217. We observed that "[t]he most telling evidence of a lack of any institutional goodwill was the wife's expert's testimony that no one would buy the practice without a noncompete clause. If the business only has value over and above its assets if the husband refrains from competing within the area that he has traditionally worked, then it is clear that the value is attributable to the personal reputation of the husband." Id. at 1216; see Christians v. Christians, 732 So.2d 47, 48 (Fla. 4th DCA 1999) (no evidence of enterprise goodwill where evidence demonstrated that any goodwill of husband's trapeze business solely rested on his well-known reputation and abilities and his continued involvement in the business); Williams v. Williams, 667 So.2d 915, 916 (Fla. 2d DCA 1996) (court described expert testimony that no one would buy practice without a non-compete clause as "telling evidence of the lack of goodwill").
In this case, two of the wife's three experts failed to utilize the fair market value approach required by Thompson. The trial court based its valuation of enterprise goodwill on the testimony and report prepared by Gilbert, the third expert.
In reaching his valuation, Gilbert reviewed data concerning sales of insurance agencies and other companies that sold insurance products; the data was collected by a website known as "Done Deals." On cross-examination, Gilbert admitted that as to each of the comparables, he did not know if the sale was predicated on the principal's continued involvement in the business or, alternatively, upon the principal's agreement to refrain from participating in a like business, by way of a non-solicitation, non-competition, or non-piracy agreement. Gilbert conceded that this information would be "very beneficial" to the valuation, but said that it was not readily available to him.
The trial court's valuation of enterprise goodwill turned on the assumption that in "any sale of enterprise goodwill," the husband would be precluded from doing business with the company's 60 existing clients. The judge attempted to distinguish a "non-solicitation/non-piracy agreement" from a broader covenant not-to-compete, which, as we ruled in Walton, was attributable to the personal reputation of the seller/husband and not to the enterprise goodwill of the business.
For the purpose of distinguishing enterprise goodwill from personal goodwill in the valuation of a business, there is no distinction between a "non-solicitation/non-piracy agreement" and a covenant not to compete. Both limit a putative seller's ability to do business with existing clients of the business. In this case, the husband's personal relationship with his *641 clients allowed him to obtain their repeat business. The trial court's valuation method inserted into enterprise goodwill an aspect of personal goodwill, the value of the husband's personal relationship with the 60 clients. This method of valuation contravened Thompson, which emphasized that to be a marital asset, goodwill "must exist separate and apart from the reputation or continued presence of the marital litigant." 576 So.2d at 270.
There was no competent, substantial evidence of a value of the Joseph Held Company above the adjusted book value of $2,918,655. We reverse both the trial court's valuation of the business at $10,500,000 and the requirement that the husband make balancing payments to equalize equitable distribution. On remand, we direct the trial court to use the value of $2,918,655 and to recalculate the scheme of equitable distribution. Because the equitable distribution will change, the trial court may revisit the issue of alimony and the necessity of life insurance to secure alimony or other award.
We find no abuse of discretion in the trial court's award of fees and costs to the wife. Although the decision is a close one, we do not find that the trial court's method of producing a final judgment contravened Perlow v. Berg-Perlow, 875 So.2d 383, 390 (Fla.2004).
Affirmed in part, reversed in part, and remanded.
STEVENSON, C.J., and SHAHOOD, J., concur.
NOTES
[1] One frequently cited definition of goodwill is that it is "`nothing more than the probability that the old customers will resort to the old place.'" Hanson v. Hanson, 738 S.W.2d 429, 433 (Mo.1987) (quoting Cruttwell v. Lye, 34 Eng. Rep. 129, 134 ch. 4 (1810)). Judge Cardozo has added that:

Men will pay for any privilege that gives a reasonable expectancy of preference in the race of competition. Such expectancy may come from succession in place or name or otherwise to a business that has won the favor of its customers. It is then known as good will.
In re Brown, 242 N.Y. 1, 150 N.E. 581, 582 (1926). A more in-depth definition explains goodwill as:
[T]he advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital stock, funds, or property employed therein, in consequence of general public patronage and encouragement, which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.
McDiarmid v. McDiarmid, 649 A.2d 810, 813 (D.C.1994) (citations omitted).