STEVENSON, J.
The instant appeal arises out of a final judgment of dissolution ending the nearly thirty-year marriage of Brian and Deborah Schmidt. The final judgment distributed *33 nearly $6 million in assets to the husband, nearly $850,000 in assets to the wife, and requires the husband to pay the wife an equalizing payment of approximately $2.5 million. The assets awarded to the husband include the husband’s retail optical business, which the trial court valued at $2,520,562 for purposes of equitable distribution. The judgment requires the payment of $25,000 per month in alimony and $3,192 per month in child support for the parties’ adult, disabled daughter, $2,000 of which is to be paid into a trust to be established for the benefit of the daughter. In this appeal and cross-appeal, both parties claim there are errors in the judgment. We agree. The most significant of the errors concern the valuation of the husband’s business and the alimony award. Remand is required to address these issues and several others.

Valuation of the Husband’s Business

Enterprise goodwill, defined as the value of a business “which exceeds its tangible assets” and represents “the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner,” is a marital asset subject to equitable distribution. Thompson v. Thompson, 576 So.2d 267, 269 (Fla.1991). Personal or professional goodwill attributable to the skill, reputation, and continued participation of an individual is not a marital asset. See id. at 270 (explaining “ ‘[a]ny value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity, which ... is not a proper consideration in dividing marital property3 ”) (quoting Taylor v. Taylor, 222 Neb. 721, 386 N.W.2d 851, 858 (1986)). Thus, the value of personal or professional goodwill must be excluded when assigning a value to a business for purposes of equitable distribution.
When valuing the enterprise goodwill of a business, the necessity of a covenant not to compete is significant as it signals the existence of personal goodwill, which cannot be included in determining the value assigned to the business for purposes of equitable distribution. Walton v. Walton, 657 So.2d 1214 (Fla. 4th DCA 1995), and Held v. Held, 912 So.2d 637 (Fla. 4th DCA 2005), illustrate the point. In Walton, the trial court was faced with the task of valuing the husband’s accounting practice. 657 So.2d at 1214-15. The evidence established that it was the husband’s name on the door, the husband who conducted the majority of client conferences, and the husband who was responsible for bringing clients to the practice. Despite such testimony, the wife’s expert opined the practice had enterprise goodwill valued at $47,250. The wife’s expert admitted, though, that the business could not be sold without an accompanying covenant not to compete. The trial court accepted the wife’s expert’s valuation for purposes of equitable distribution. This court reversed, finding that “[t]he most telling evidence of a lack of any institutional goodwill was the wife’s expert’s testimony that no one would buy the practice without a non-compete clause.” Id. at 1216. “If the business only has value over and above its assets if the husband refrains from competing within the area that he has traditionally worked, then it is clear that the value is attributable to the personal reputation of the husband.” Id.
Held involved the valuation of the husband’s insurance agency. 912 So.2d at 638. The husband specialized in high-risk policies and, at the time of the hearing, the agency had about sixty accounts that generated large commissions. The parties stipulated to the adjusted book value of the agency, but disagreed as to the existence of enterprise goodwill. The wife’s *34 expert calculated enterprise goodwill by resort to sales data, but admitted he did not know whether these sales required the seller’s continued involvement in the business and/or execution of non-compete or non-piracy agreements. In valuing the agency’s enterprise goodwill, the trial court relied upon the testimony of the wife’s expert and predicated the value on the assumption that the husband would execute a non-solicitation/non-piracy agreement precluding him from doing business with the agency’s existing customers. This court reversed that valuation, finding that, for purposes of separating enterprise goodwill from professional goodwill, there was no distinction between a non-compete agreement and a non-piracy agreement and that the trial court’s valuation inserted into the enterprise goodwill an aspect of the husband’s personal goodwill, i.e., the value of the husband’s personal relationship with the sixty clients. Id. at 640-41.
Here, the trial court accepted the testimony of the wife’s expert in valuing the business. According to the wife’s expert, the business had a total fair market value of $3,519,519. The expert testified that $974,199 of this figure represented personal goodwill attributable to the husband and that, after deducting personal goodwill and the husband’s premarital interests, the business had a value of $2,520,562 for purposes of equitable distribution. The expert expressly testified, however, that this $2,520,562 value assumed and required that the husband execute both a non-compete and some type of transitional consulting agreement. And, when pressed, the expert testified he had not performed an analysis as to the value of the business were the husband not to sign a non-compete. Because the $2,520,562 value requires execution of a non-compete agreement, it is clear that such valuation still includes a personal goodwill component. This personal goodwill must be excised from the value assigned to the business for purposes of equitable distribution. We thus reverse the judgment’s valuation of the business and remand for further proceedings.

Alimony

The trial court awarded $25,000 per month in alimony, finding this was a 29-year marriage; the wife had raised the couple’s children and, by agreement of the parties, had not worked outside the home; and, the parties had lived a lavish lifestyle, with the husband earning $100,000 per month. The court rejected “portions” of the wife’s expert’s analysis and “portions” of the husband’s expert’s analysis. There were no specific factual findings supporting the $25,000 figure.
The wife’s expert testified the wife’s monthly needs were $18,934, requiring an award of $29,129 after accounting for taxes. The $18,934 assumed continuation of expenses associated with the wife’s continued residence in the former marital home; included $3,115 per month for home owners’ insurance, although the parties owned the home and had not carried such insurance for years; and included $786 allocated to the wife as her half of the annual cash surplus estimated by the wife’s expert. According to the husband’s expert, the wife’s “needs” amounted to approximately $9,000 per month. This amount excluded the housing costs associated with the marital residence.
The $25,000 award is clearly more in line with the wife’s expert’s analysis but, given the findings in the judgment, the award is not supported by the record. The wife’s expert’s analysis included in excess of $3,000 per month for homeowners’ insurance the parties had not carried for years. It also included the signifi *35 cant expenses associated with the upkeep of the marital home. The final judgment, though, required that the husband pay these expenses pending the sale of the home. Additionally, the wife’s expert’s “needs” analysis included $786 in annual cash surplus. Such amount may not be deemed a “need” of the wife as alimony may not include a savings component. See Rosecan v. Springer, 985 So.2d 607, 610 (Fla. 4th DCA 2008). When these amounts are excluded, as they should have been, the $25,000 alimony award is not supported by the evidence. See Farley v. Farley, 858 So.2d 1170, 1172 (Fla. 2d DCA 2003) (recognizing that trial court has discretion in award of alimony, but that award must be reversed “where the record does not contain substantial, competent evidence to support the trial court’s findings regarding the amount of alimony awarded”).

The Tax Liability

It was agreed that the husband underre-ported the income earned by his business for the 2004-2009 tax years and, thus, underreported the parties’ personal income. Whether the wife was aware of the underreporting was disputed at trial. During the pendency of the divorce, the husband hired a tax attorney and sent the IRS a check for $586,795.58, representing the estimated tax due on the underreport-ed income. The IRS returned $379,000 of the funds and, at the time of the hearing, the wife was in possession of the un-nego-tiated checks.
Paragraphs I and 12 of the final judgment include findings to the effect that it was the husband who was responsible for the underreported income and that the court has the power to make an unequal, but equitable, distribution of the debt. Paragraphs I and 12 do not, however, actually distribute the debt to the husband and, in fact, paragraph I provides that the $379,000 refunded by the IRS shall be split equally between the parties. Paragraph 11 of the judgment states “[t]he Husband and Wife shall pay and be responsible for all debts including interest and penalties due and owing the Internal Revenue Service due to their failure to properly report their income,” suggesting the court intended to allocate the debt equally between the parties. (Emphasis added). The spreadsheet appended to the judgment states that the accrued interest and penalties are non-marital and distributes all of the “to be determined” liability to the husband.
The husband contends the judgment treated the tax liability as a marital debt and the trial court erred in failing to credit him for any non-marital funds used to make the $586,795.58 payment to the IRS. The wife contends the language in paragraph 11 making the parties jointly liable for the debt is a “clerical” error. We decline the wife’s invitation to deem the language in paragraph 11, making the parties jointly responsible for the tax liability, as a mere clerical error. Nevertheless, since the judgment has conflicting language regarding the treatment to be afforded the tax liability, leaving the trial court’s intent in question, we remand for the trial court to clarify its intent and findings on this issue.

The Remaining Issues

Apart from the alimony, the business valuation, and the tax liability, the husband claims error in the trial court’s failure to address $204,000 the wife removed from marital accounts prior to the filing of the petition and the $110,000 the husband was ordered to pay toward the wife’s fees (issue IIIB); the valuation of the Scotland Cay property (issue IIIC); and the improper inclusion of several vehicles in the *36 equitable distribution (issue HID).[1] We affirm as to point IIIC without further comment and the wife has conceded error with regard to point IIID.
This, then, leaves the claim that the trial court erred in failing to address the $204,000 the wife removed from marital accounts prior to the filing of the petition and the $110,000 the husband was ordered to pay toward the wife’s fees. The temporary support order indicates that $103,872 of this amount was used to pay living expenses the wife incurred prior to entry of the temporary support order. It was not error for the judgment to fail to include the $103,872. See Bush v. Bush, 65 So.3d 1101, 1102 (Fla. 2d DCA 2011) (holding it was error to equitably distribute $143,000 account expended for support during pendency of proceedings).
The husband’s argument has merit, however, to the extent that the judgment failed to address that portion of the $204,000 that went toward the wife’s fees and the additional $110,000 the husband was subsequently ordered to pay towards the wife’s attorney’s fees. In both orders, the trial court made it clear that the awards were without prejudice to the parties making further argument as to which party should bear ultimate responsibility for such fees. And, both parties made argument on this issue at the final hearing. The judgment, however, made no findings regarding the temporary fees and, instead, simply ordered each party to be responsible for his or her own costs and fees. The judgment’s language makes it unclear whether the court intended each party to bear the cost of his or her fees outstanding at the time of the judgment or whether the court intended that the husband be credited with the temporary fees paid for the benefit of the wife. We thus remand for further findings on this issue.
Finally, in her cross appeal, the wife claims the trial court erred in failing to make a finding as to the husband’s net monthly income for purposes of child support and erred in ordering a portion of the child support paid into a trust. The husband has conceded error. See Finley v. Scott, 707 So.2d 1112, 1118 (Fla.1998) (holding that amount of child support that exceeds child’s needs can be ordered paid into trust only when necessity for guardianship of property has been established in chapter 744 proceeding); Aguirre v. Aguirre, 985 So.2d 1203, 1207 (Fla. 4th DCA 2008) (“A final judgment is facially erroneous, requiring remand, where it does not make any findings as to the net income of each party as a starting point for calculating child support or explain how the calculation was performed.”).
Accordingly, having considered all issues raised, we reverse the final judgment’s valuation of the husband’s business, the alimony award, the provision in the judgment requiring that a portion of the child support be paid into a trust; and the inclusion of the 2000 Dodge Dakota, the 1982 Datsun 280ZX, and the 1981 Datsun 280Z in the equitable distribution. The matter is remanded and the trial court is directed (1) to reconsider the value of the husband’s business, taking additional evidence if necessary, and ascribe a value for the business which does not include personal goodwill; (2) to reconsider the alimony award, eliminating from the wife’s “needs” those expenses associated with the marital resi *37 dence that the husband has been required to pay, the homeowners’ insurance the parties did not carry and any savings component; (8) to clarify its intent concerning the tax liability; (4) to address the temporary fees the husband paid on behalf of the wife and clarify whether the court intended to hold the husband or the wife ultimately responsible for the same; and (5) to make a finding as the husband’s net income for purposes of child support.

Affirmed in Part; Reversed in Part; and Remanded.

DAMOORGIAN, C.J., and CONNER, J., concur.

. The equitable distribution plan included a 2000 Dodge Dakota; a 1982 Datsun 280 ZX; and a 1981 Datsun 280 Z. Each of these vehicles were treated as a marital asset and distributed to the husband. The husband asserts this is error as the 2000 Dodge was sold prior to the filing of the petition; the 1982 Datsun was a pre-marital asset; and there was no 1981 Datsun.