720 So.2d 624 (1998)
Mary Jane M. BAXTER, Appellant,
v.
Rodney Craig BAXTER, Appellee.
No. 98-1041.
District Court of Appeal of Florida, Fifth District.
November 20, 1998.
Marcia K. Lippincott of Marcia K. Lippincott, P.A., Maitland, for Appellant.
Roger B. Butcher and Gus R. Benitez of Benitez & Butcher, P.A., Orlando, for Appellee.
PER CURIAM.
AFFIRMED.
GRIFFIN, C.J. and COBB, J., concur.
HARRIS, J., concurs and concurs specially with opinion.
HARRIS, J., concurring and concurring specially.
Although I concur in the per curiam affirmance, this appeal requires further discussion. The wife in this relatively long term marriage fell in love with a woman friend and moved with her to a mountain top in Puerto Rico. Although the wife's friend has an income of over $100,000 a year, the wife feels committed to share the living expenses of this new union and in her divorce action sought to have the former husband be required to pay her share of these expenses in the form of temporary and permanent alimony. Because the court awarded her only $860 per month temporary alimony, she appeals claiming the award was grossly unreasonable. I disagree.[1]
To paraphrase Lewis Carroll:
"The time has come," the Walrus said, "to talk of many things: of making vows and breaking vows and the consequence it brings."
I suggest that we judges, as those who compel compliance with alimony judgments under such dire consequences as seizure of property or even incarceration, consider carefully the underpinning, the legal justification for the alimony award. There are three arguments to support alimony in this case. First, a pension-like benefit; second, a contractual right, expressed or implied, arising from the marital relationship; third, a statutory right.
*625 In this case, the wife claims that until she fell in love with her paramour she had been a "good wife and mother" and is entitled to future support because of the services she provided in the past. The fallacy of this argument is, of course, that she provided those services, not to the husband, but to the union, the marriage. Likewise, the husband, by working diligently and providing the resources for the family, also provided services to the marriage. Under these circumstances, why is one "employee" of the marriage more entitled to a pension than the other? Obviously the marriage, once dissolved, has no assets with which to pay either a pension. Rather, since upon dissolution all marital assets are shared, usually equally, it appears that the pension rights of both have been paid in a lump sum up front. Why, then, should one of the spouses, the husband in this case,[2] have to pay a pension owed by the marriage? To base alimony on a pension argument is not unlike requiring one partner in a two-person law partnership, after the partnership has been dissolved and the assets divided, to continue sharing his income with the other partner ever after. The pension argument, at least under the facts of this case, simply doesn't justify alimony under any fair and reasonable analysis.
The contractual right to alimony has a much greater appeal. Upon entering marriage "until death do us part," the spouses commit to mutual support, mutual fidelity and mutual compassionate treatment thereafter. Unlike Florida's divorce law, the marriage vows do not recognize an early out option. If the breadwinner, after taking the marriage vows, decides that greener pastures await outside the marriage and seeks a divorce or if the breadwinner's conduct is so deplorable that it drives the other spouse to seek a divorce, it appears that a contractual basis for continuing the promised support is present. But that assumes that it is the paying spouse who first breaches the marital contract. In the case at bar, it is the one that breached the marriage vows that is now seeking damages (alimony) under the contract. Basic contract law, however, maintains that the one breaching the agreement cannot recover under the agreement.
That leaves only the statutory basis for alimony in this case. Chapter 61, Florida Statutes, provides that although a spouse is entitled to a divorce on demand, it provides only that the court may order alimony. Hence, the legislature did not provide that every divorce, even in a marriage of long duration, requires alimony. No-fault divorce does not mean automatic alimony. The legislature, perhaps recognizing that cases such as this would come along in which the imposition of alimony would shock the consciences of most people, if not judges, provided that in determining whether to award alimony (although such determination is not limited to this consideration [3]), the judge may "consider the adultery of either spouse and the circumstances thereof ..." It is unfortunate that this language, quite clear on its face, has lost much of its apparent meaning by its interpretation by the courts.
Before no-fault divorce, only the wife could receive alimony under Florida's divorce law. See Chapter 65, Florida Statutes (1967). But even the wife's right to alimony was limited. Section 65 .08 provided: "but no alimony shall be granted to an adulterous wife." Hence, before no-fault divorce, the affect of adultery was gender specific. And that is understandable. Adultery was intended to affect the rights of only the receiving spouse. The husband (always the paying spouse) had the obligation to support, either because he was seeking the divorce or because his conduct was sufficiently egregious to constitute a "cause" for divorce, whether or not he had committed adultery. Hence the husband's adultery was irrelevant to the issue of the obligation to pay alimony.
When the Legislature provided in the no-fault divorce statute that the court may consider *626 the adultery of either spouse, it did not intend to denigrate the significance of adultery in the marital relationship nor prevent its consideration in the decision on whether to award alimony. It merely removed adultery's absolute bar to alimony and recognized that under the no-fault law both the husband and the wife may be entitled to alimony and that the adultery of either may affect their right to receive it. The change was not intended, I submit, to affect the obligation of the paying spouse, if it otherwise exists, to pay support based on his or her ability to pay and the other spouse's needs; instead, the paying spouse's adultery should be considered only as a justification to attribute a higher ability to pay than the record suggests based on a finding that such adulterous relationship has depleted assets otherwise available for support.
Our supreme court in Noah v. Noah, 491 So.2d 1124 (Fla.1986), seems to have subscribed to the view expressed above. There, the question was whether the husband, the paying spouse, should be required to pay a penalty in the form of alimony greater than the wife's needs because of his adultery. The court recognized that the wife's hurt feelings did not increase her needs. The court also found (and this is the part that causes the current confusion in the appellate courts), that the penalty award of alimony was not justified because there was no showing that the husband's adultery depleted family resources. Hence, in so far as the paying spouse is concerned, the supreme court found that adultery was immaterial unless it affected the ability to pay.
Many things happen between the cup and the lips or, to be more precise, between the supreme court's writing and the appellate court's reading. Appellate courts have taken this depletion of marital assets language and have applied it to circumvent the trial court's statutory authority to consider the adultery of the requesting spouse in determining whether or not to award alimony. Thus, in Green v. Green, 501 So.2d 1306 (Fla. 4th DCA 1986), the court reversed a trial court which reduced the award to a wife because of her adultery. See also Phillips v. Phillips, 504 So.2d 412 (Fla. 4th DCA 1987), and Childers v. Childers, 640 So.2d 108 (Fla. 4th DCA 1994).
The Third District, in a case strikingly similar to ours in which a wife moved in with a woman with whom she had fallen in love, reversed a trial court's denial of alimony stating: "there is no evidence that the wife's misconduct had a direct adverse impact on the family's finances." Heilman v. Heilman, 610 So.2d 60, 61 (Fla. 3d DCA 1992). See also Eckroade v. Eckroade, 570 So.2d 1347 (Fla. 3d DCA 1990).
And the First District in Pardue v. Pardue, 518 So.2d 954 (Fla. 1st DCA 1988), held: "It is improper to refuse to award alimony or reduce the amount of alimony, ... merely because of the existence of the requesting spouse's adultery."
I suggest that these cases not only misconstrue the holding of Noah, they rewrite section 61.08(1) which expressly permits the trial court to consider adultery in determining whether to award alimony.
The fact that the legislature enacted a nofault divorce law for Florida means only that one can leave the union at will. The legislature did not make alimony concomitant with such voluntary departure. The right to alimony should require more than merely ending the marriage.
Because of the decisions from other appellate courts, if a breadwinner (he or she) who has been faithful to his or her marital vows and commitments wishes to avoid the consequences of paying alimony to a spouse who elects to withdraw without cause from the relationship, legislative clarification may be the only remedy.
NOTES
[1] I agree with the wife's counsel that the court should not be concerned with the gender of the wife's paramour. It is the fact that the wife has breached her marriage vows, not with whom she has breached them, that should interest the court.
[2] But this is a gender neutral argument. See Young v. Young, 677 So.2d 1301 (Fla. 5th DCA 1996).
[3] For example, the factors listed in section 61.08(2) are relevant both in considering the amount of alimony to award as well as whether to award any alimony at all. The contribution of each party to the marriage can include both positive and negative contributions such as the wilful act of destroying the marriage through no fault of the other spouse.